DOUGLAS EBERT, Indiv. and d/b/a D and E Enterprises, Plaintiff-Appellant, v. NASSAU TERRACE CONDOMINIUM, INC., Defendant-Appellee.

First District (5th Division)   No. 85—505

Opinion filed June 13, 1986.

Gregory Prena, of Buffalo Grove, for appellant.

Suzanne Philbrick, of Oak Lawn, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Douglas Ebert, doing business as D and E Enterprises, appeals from the orders of the circuit court of Cook County dismissing his complaint and denying his motion to vacate the dismissal and to file an amended complaint. For the reasons set forth below, we reverse and remand.

On March 6, 1984, Ebert filed an action against defendant, Nassau Terrace Condominium Inc., to recover monies due him for labor, materials and services provided by him on 29 occasions between May 19, 1980, and April 3, 1981, on the premises located at 12542-58 South Fairview Avenue in Blue Island. Ebert alleged that he provided his labor, materials and services, described in exhibits attached to his

complaint, at the request of Frank H. Adams, who he alleged acted "in his capacity as the Board of Managers" of Nassau. Ebert further alleged that $3,014 was due and owing to him, that Nassau was the successor corporation operating the premises through its board of managers, that Nassau was "responsible for the obligation to pay plaintiff the sums due him" and that Nassau had refused to pay him.

On August 10, 1984, Nassau filed a motion to strike and dismiss Ebert's complaint pursuant to the provisions of section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), alleging that Ebert's complaint was insufficient at law and failed to state a cause of action. Nassau further asserted that Ebert failed to allege a legal relationship between himself and Nassau; that any agreement between Ebert and a third party imposed no duty or obligation on Nassau; that Ebert failed to allege any agreement between himself and Nassau; and that Nassau commenced its operation of the condominium association on June 3, 1981, and, "prior thereto, the named Frank H. Adams, acted in his own capacity as contractor and/or developer."

On August 31, 1984, the court entered an order striking Ebert's complaint and dismissing the action, "with no opportunity or leave granted to plaintiff to amend the complaint stricken." Ebert subsequently filed a motion to vacate the dismissal. He asserted that Nassau's motion to dismiss failed to state wherein his complaint was insufficient at law and that the court improperly relied on statements, unsupported by affidavit, not found in or capable of being inferred from the allegations contained in his complaint.

Ebert's motion to vacate also sought leave to file an amended complaint and alleged, in part, the following: that the premises at 12542-58 South Fairview contained 64 residential apartment units which were converted to condominium ownership under the name of Nassau Terrace Condominiums by registration of a declaration with the registrar of titles of Cook County on March 25, 1980; that Frank H. Adams was the original owner and developer from March 25, 1980, to June 26, 1981, and in his own name and through Condo Conversion Corporation acted as or in lieu of the board of managers for the condominium ownership pursuant to chapter 30 of the Illinois Revised Statutes and in conformity with article XIX, section 1 of the recorded declaration; and that on June 26, 1981, an order was entered in Nassau Terrace Condominium, Inc. v. Frank H. Adams, et al., in which Nassau replaced Adams and Condo Conversion Corporation "in the management and operation of the condominium premises, thereafter acting as the legal body or Association of the condominium unit

ownership from and after June 26, 1981."

The court denied Ebert's motion to vacate and to file an amended complaint on January 23, 1985, and this appeal followed.

We first note that the trial court incorrectly considered Nassau's motion to dismiss on a section 2—615 basis. (Ill. Rev. Stat. 1983, ch. 110, par. 2—615.) A section 2—615 motion pertains to pleadings, whereas a section 2—619 motion pertains to involuntary dismissals based upon certain defects and defenses. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619.) After examining Nassau's motion to dismiss, we find the motion should have been filed pursuant to section 2—619(a)(9) since Nassau alleged affirmative matters, *i.e.*, that Ebert's action against it is barred by the fact that Frank Adams was acting in his own capacity as a "contractor and/or developer" prior to June 3, 1981, and that Nassau had no duty or obligation to Ebert for any agreements he entered into with a third party. Although Nassau's failure to file its motion to dismiss under the proper section of the Code is not fatal in the present case, a trial judge should not countenance this not infrequent practice since at another time this might require reversal if prejudice results. *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360.

■ Notwithstanding whether a motion to dismiss is filed pursuant to section 2—615 or section 2—619, when ruling on a motion to dismiss all well-pleaded facts of a complaint are to be taken as true, although conclusions of law are not admitted. (*McCabe v. Burgess* (1978), 57 Ill. App. 3d 450, 373 N.E.2d 327, *rev'd on other grounds* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.) Here, Ebert argues that his complaint properly stated a cause of action sounding in contract against Nassau based on his assertion that Adams was Nassau's agent. In support of this contention, he relies on the provisions of the Condominium Property Act (the Act) (Ill. Rev. Stat. 1983, ch. 30, par. 301 *et seq.*) and, specifically, section 18.2(a), which provides as follows:

"Administration of property prior to election of initial board of managers. (a) Until election of the initial board of managers, the same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the board of managers by this Act and in the declaration and bylaws shall be held and performed by the developer." (Ill. Rev. Stat. 1983, ch. 30, par. 318.2(a).)

Ebert thus contends in effect that Adams, as the developer and agent of Nassau, bound Nassau, as his principal, for the alleged monies due him.

On the other hand, Nassau argues there is no privity of contract between the condominium association and Ebert because of Adams' failure to disclose to the board of managers all outstanding contracts he had with Ebert within 60 days of the board's election and Ebert's failure to properly file mechanic's liens against Nassau in the office of the registrar of titles. Nassau first relies on section 18.2(d) of the Act, which states, in pertinent part, that within 60 days after the election of the board of managers, the developer must submit to the board:

"(1) All original documents as recorded or filed ***;

(2) A detailed accounting by the developer, setting forth the source and nature of receipts and expenditures in connection with the management, maintenance and operation of the property ***;

(3) Association funds, which shall have been at all times segregated from any other moneys of the developer;

(4) A schedule of all real or personal property ***;

(5) A list of all litigation ***." Ill. Rev. Stat. 1983, ch. 30, par. 318.2(d).

■ We first note that Nassau's reliance on section 18.2(d) in support of its first argument is misplaced. Nowhere in this section is there any suggestion that contracts entered into by a developer on behalf of an unincorporated association are not binding on it. This section pertains only to the developer's duties and obligations, upon his relinquishment of administration of the property, to the board of managers.

■ We also note that Nassau's further "suggestion" that no privity of contract existed between Ebert and the individual unit owners also fails based on section 18.2(e) of the Act. Section 18.2(e) authorizes one-half of the unit owners to cancel by vote "[a]ny contract, lease, or other agreement made prior to the election of a majority of the board of managers other than the developer by or on behalf of unit owners, *** the unit owners' association or the board of managers, which extends for a period of more than 2 years from the recording of the declaration." (Ill. Rev. Stat. 1983, ch. 30, par. 318.2(e).) This section clearly indicates the interrelationship of all three bodies—the unit owners, the association and the board of managers—and their relationship to the developer. Accordingly, a claim against any one of the three bodies, or the developer, *if acting in his capacity as their agent,* would be a claim against all of them prior to the election of the board.

■ ■ The issues thus before us are whether an agency relationship existed between Adams and Nassau and, if so, whether Adams

acted within the scope of that agency, and whether Ebert stated a cause of action against Nassau on this basis in his original and/or amended complaints. As our court stated in *Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746, 449 N.E.2d 897:

> "An agency relationship need not be based on an express appointment and acceptance. [Citation.] Unless there is no dispute as to the parties' relationship, *the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact.* [Citation.] *** By referring to the situation occupied by the parties, and their acts, the existence and extent of an agency relationship can be shown, even if by circumstantial evidence." (Emphasis added.) (114 Ill. App. 3d 746, 749, 449 N.E.2d 897.)

Also to be taken into consideration is well-settled law that a party cannot repudiate the acts of another done on his behalf and at the same time accept the fruits of and benefits of those acts unless within a reasonable time of learning of the acts of the other he returns the benefits. *Ault v. Associates Discount Corp.* (1963), 43 Ill. App. 2d 409, 193 N.E.2d 226.

■ In addition, our analysis of all of section 18.2 of the Act discloses that the developer, *absent other facts indicating the contrary,* acts as an agent or on behalf of the owners of units of an unincorporated association from the date of declaration until the election of the initial board. This conclusion is buttressed by the historical and practice notes which follow section 18.2. The note reads:

> "Section 18.2 places squarely upon the developer the obligation to carry out the duties and functions of the board between the recording of the declaration and the election of the initial board of managers." Ill. Ann. Stat., ch. 30, par. 318.2, Historical and Practice Notes, at 277 (Smith-Hurd Supp. 1986).

■ Accordingly, based on the above-cited provisions of the Condominium Property Act and Illinois law relating to principal and agent, it is clear that Ebert's complaint and his later amended complaint stated a cause of action sounding in contract against Nassau, *i.e.,* that Ebert performed at the request of Adams, the alleged agent of Nassau, and Nassau as principal is therefore liable to Ebert for monies due him. Whether Adams in fact was the agent of Nassau and acted within the scope of that agency were questions of fact to be decided by the trier of fact. We find, therefore, that the trial court erred in dismissing Ebert's original complaint and in denying his motion to vacate and to file an amended complaint.

Because of the above disposition, we do not address Nassau's me-

chanic's lien argument.

For the foregoing reasons, we reverse the orders of the circuit court of Cook County, and remand the cause with directions that plaintiff Ebert be granted leave to file his amended complaint and that his amended complaint stand as his complaint for further proceedings.

Reversed and remanded, with directions.

LORENZ and PINCHAM, JJ., concur.