BRIDGETTE GLICKMAN, Plaintiff-Appellant, v. RICHARD C. TEGLIA, JR., Indiv. and as an Agent of 4600 South Indiana Condominium Association, Inc., and as an Agent of 4600 South Indiana Development Corporation, *et al.*, Defendants (4600 South Indiana Condominium Association, Inc., Defendant-Appellee).

First District (4th Division) No. 1—08—0392

Opinion filed February 19, 2009.

Jay Paul Deratany & Associates, Ltd. (Jay Paul Deratany, of counsel), and Jeffrey G. Mashni, both of Chicago, for appellant.

Merlo Kanofsky Brinkmeier & Gregg Ltd., of Chicago (Martin A. Kanofsky, Alan J. Brinkmeier, and Jennifer L. Smith, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff-appellant, Bridgette Glickman, filed a negligence action against defendants to recover damages for injuries sustained when she slipped and fell on the ice while walking on the stairways and landing of her condominium unit. Defendant 4600 South Indiana Condominium Association, Inc. (Association), filed a motion to dismiss and a subsequent amended motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 2006)). Glickman appeals the trial court's order granting the Association's amended motion to dismiss, contending that the trial court erred in finding that the Association did not owe a duty to Glickman. Glickman also appeals the trial court's denial of Glickman's motion for leave to file an amended complaint. For the following reasons, we reverse the trial court's order granting the Association's amended motion to dismiss and affirm the trial court's order denying Glickman's motion for leave to file an amended complaint.

## BACKGROUND

On January 9, 2005, Glickman sustained multiple fractures to her ankle when she slipped and fell while walking on the stairways and landing that are located outside her condominium unit. The stairways and landing are within the common elements of the condominium property maintained by the Association. Glickman filed a complaint against both the developer and the designer of her condominium building and their respective companies. She also named the company

contracted by the Association for snow and ice removal, as well as the Association itself.

The complaint alleges negligent design and construction in the building's downspouts, gutters and drainpipes that caused an unnatural buildup of ice on the back porches and stairs of the condominium units. The complaint further alleges that the Association failed to maintain its premises in a reasonably safe condition, failed to warn the unit owners of the danger posed by the ice build-up, and failed to properly secure those areas in which there existed an unnatural accumulation of water and ice that posed a threat to the health and safety of Glickman and others.

The Association's declaration and bylaws were recorded on July 18, 2003. After this date, the Association began collecting assessments from unit owners. Glickman made her assessment checks payable to 4600 S. Indiana Condominiums and mailed them to the 4600 S. Indiana Condominium Association. The developer, Richard C. Teglia, Jr., was a signatory on the bank account held in the name of the Association from 2003 until March 2005. The Association was incorporated as an Illinois not-for-profit corporation on February 20, 2004. Teglia was named as a director of the Association in section 5 of the articles of incorporation "until the first annual meeting." From 2003 until March 2005, the Association entered into various service contracts. From July 9, 2004, to July 9, 2005, the Association was the named insured on the condominium property's insurance policy. The Association's initial board of directors was elected on March 6, 2005.

The Association filed a motion to dismiss the action as against the Association, contending that it had no duty to Glickman until its initial board was elected on March 6, 2005, almost two months after her fall. The trial court granted the motion on January 14, 2008, and made a finding that the order was appealable under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Other parties remained in the suit. Glickman filed a motion for leave to file an amended complaint on June 5, 2008. The trial court denied the motion because it was not filed within 30 days of the entry of the dismissal order. This appeal follows.

## ANALYSIS

Our review of an order granting a motion to dismiss pursuant to section 2—619 of the Code is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

Glickman contends that the Association had a duty to maintain the common elements of the property at the time of her fall despite the fact that the initial board of managers had not yet been elected.

The Association responds that it had no duty until the developer turned the Association over to the control of the unit owners via a duly elected board. In order to determine whether the Association owed a duty to Glickman, we must construe sections 18.2(a) and 18.3 of the Condominium Property Act (the Act) (765 ILCS 605/18.2(a), 18.3 (West 2006)).

The primary rule of statutory construction is to ascertain and give effect to the legislature's "true intent and meaning." *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 80, 838 N.E.2d 949, 952 (2005). The language of the statute itself provides the most reliable indicator of the legislature's intent. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320, 789 N.E.2d 1248, 1252 (2003). "We afford the language of the statute its plain and ordinary meaning [citation] and construe the statute as a whole." *Rogers*, 204 Ill. 2d at 320, 789 N.E.2d at 1252. "Words and phrases must not be viewed in isolation but must be considered in light of other relevant provisions of the statute." *Rogers*, 204 Ill. 2d at 320, 789 N.E.2d at 1252. "We [must] also presume that in enacting the statute the legislature did not intend absurdity, inconvenience, or injustice." *Rogers*, 204 Ill. 2d at 320, 789 N.E.2d at 1252. "Where the language of the statute is clear and unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature." *Rogers*, 204 Ill. 2d at 320, 789 N.E.2d at 1252. "It is never proper for the courts to depart from the plain meaning of the statute by reading into it exceptions, limitations or conditions which conflict with the intent of the legislature." *Rogers*, 204 Ill. 2d at 320, 789 N.E.2d at 1252.

■ With these principles in mind, we turn to the statutory provisions in question. Section 18.3 provides:

> "The unit owners' association is responsible for the overall administration of the property through its duly elected board of managers. *** The association shall have and exercise all powers necessary or convenient to effect any or all of the purposes for which the association is organized, and to do every other act not inconsistent with law which may be appropriate to promote and attain the purposes set forth in this Act or in the condominium instruments." 765 ILCS 605/18.3 (West 2006).

The trial court ruled that the responsibility for the care and maintenance of the property which is imposed upon the Association by the Act is only done so through its duly elected board of managers. Prior to this election, the Act imposes all of those responsibilities on the developer. Therefore, the trial court reasoned, even though the Association may be in existence, it has no duties prior to the election of the initial board of managers.

To determine whether this is an accurate interpretation of the Act, we must consider the statute as a whole. As quoted above, section 18.3 places the responsibility for the overall administration of the property on the Association through its duly elected board of managers. As the trial court noted, the Act also provides for the administration of the property prior to the election of the initial board of managers. Section 18.2(a) states:

"Until election of the initial board of managers that is comprised of a majority of unit owners other than the developer ***, the same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the board of managers by this Act and in the declaration and bylaws shall be held and performed by the developer." 765 ILCS 605/18.2(a) (West 2006).

■ Looking at the plain language of section 18.2(a), this provision operates to impose the responsibilities of the *board of managers* on the developer, not the responsibilities of the association itself. To determine the responsibilities of the board of managers, we look to section 18.4 of the Act. This section provides:

"§18.4. *Powers and Duties of Board of Managers.* The board of managers shall exercise *for the association* all powers, duties and authority vested in the association by law or the condominium instruments ***. The powers and duties of the board of managers shall include, but shall not be limited to, the following:

(a) To provide for the operation, care, upkeep, maintenance, replacement and improvement of the common elements. ***
***

(c) To levy and expend assessments.

(d) To collect assessments from unit owners.

(e) To provide for the employment and dismissal of the personnel necessary or advisable for the maintenance and operation of the common elements.

(f) To obtain adequate and appropriate kinds of insurance.
* * *

In the performance of their duties, the officers and members of the board, *whether appointed by the developer or elected by the unit owners,* shall exercise the care required of a fiduciary of the unit owners." (Emphasis added.) 765 ILCS 605/18.4 (West 2006).

It is clear from the plain language of the Act, when looking at these three sections together, that the condominium association is responsible for the overall administration of the property. This responsibility is ordinarily performed through the association's duly elected board of managers. However, during the interim period from the time of the declaration until the election of the initial board of managers, the Act provides that the rights, powers, privileges, duties

and obligations of the board of managers are held and performed by the developer. The Act charges the board of managers with exercising all powers, duties and authority vested in the association *on behalf of the association*. This does not mean the duties of the association are imposed on the developer in the interim period and the association itself therefore has no duties. Rather, the duties of the association that would normally be performed by its duly elected board of managers are to be performed by the developer as the interim board on behalf of the association until the initial board of unit owners is elected. The duties of the board of managers include maintenance of the common elements and hiring of personnel as necessary for such maintenance, collecting and expending assessments, and obtaining adequate insurance, all on behalf of the association. Moreover, the members of the board have a fiduciary duty to the unit owners regardless of whether they are elected by the unit owners or appointed by the developer.

Here, the Association was created upon the recording of its declaration and bylaws on July 18, 2003. At that time, the duties, obligations, rights and privileges of the Association's board of managers were imposed on or vested in the developer under the Act. At the time of Glickman's fall, the initial board of managers had not yet been elected so the duties of the Association were still being performed by the developer on behalf of the Association.

■ The Act also provides in section 18.1 for a not-for-profit corporation to be incorporated for the purpose of facilitating the administration and operation of the property. 765 ILCS 605/18.1 (West 2006). This section further provides:

> "(d) The board of directors of such corporation shall constitute the board of managers provided for in this Act, and all of the rights, titles, powers, privileges and obligations vested in or imposed upon the board of managers in this Act and in the declaration may be held or performed by such corporation or by the duly elected members of the board of directors thereof and their successors in office." 765 ILCS 605/18.1(d) (West 2006).

■ The Association was incorporated as a not-for-profit corporation on February 20, 2004. According to section 3 of the articles of incorporation, the corporation was organized for the purpose of maintaining a condominium association. As the initial board of managers had not yet been elected at the time of incorporation, Teglia was named as a director of the Association "until the first annual meeting" in section 5 of the articles of incorporation. Under the provision quoted above, the board of directors constitutes the board of managers for purposes of the Act.

Teglia, as the sole director, was acting as the interim board of

managers on behalf of the Association. He was collecting assessments from the unit owners, and presumably expending a portion of those assessments on contracts for services in order to maintain the property on behalf of the Association. His name was on the Association's bank account. He obtained an insurance policy in the Association's name, not in his own name or the name of his development company, again presumably with a portion of the assessments he collected from the unit owners. All of these are duties imposed by the Act on the board of managers to be performed on behalf of the Association, regardless of whether they are carried out by a duly elected board of managers or by the developer acting as the interim board of managers.

We have found no case law in Illinois that addresses this issue directly. The Association relies on *Metropolitan Condominium Ass'n v. Crescent Heights*, 368 Ill. App. 3d 995, 859 N.E.2d 271 (2006), for the proposition that even though the Association may have been formed prior to the election of the initial board, it becomes a separate entity after the first election. The Association specifically cites to the statement by this court that "the composition and interests of condominium associations fundamentally change upon the turnover." *Metropolitan Condominium*, 368 Ill. App. 3d at 1006, 859 N.E.2d at 281. *Metropolitan Condominium* involved the developer's duty under section 18.2(d) of the Act (765 ILCS 605/18.2(d) (West 2006)) to provide an accounting to the initial board of managers. The association was asking for specific details regarding the sale of the units in order to determine whether the developer properly paid assessments for all units prior to the initial sale as required under the Act.

In the section of the opinion cited by the Association, this court was addressing the issue of whether the association in *Metropolitan Condominium* had constructive knowledge of all relevant financial information because it had retained the managing agent hired by the developer during the interim period. In rejecting the developer's argument that agency principles effectively exempted it from providing the association with a detailed accounting, this court reasoned that because "the composition and interests of condominium associations fundamentally change upon the turnover, the Act imposes an affirmative duty on a developer to provide to the first unit-owner-controlled board certain documents and financial information which the developer-controlled board is responsible for maintaining prior to the turnover." *Metropolitan Condominium*, 368 Ill. App. 3d at 1006, 859 N.E.2d at 281.

Although we agree that the Act imposes an affirmative duty on the developer to provide a detailed accounting and that the composition of the board changes upon the election of the initial board, we do

not agree that the interests of the association fundamentally change at that time. In fact, the plain language of the Act compels the opposite conclusion. During the transition period, the developer acts as the interim board of managers and has the same duties and obligations imposed on the board of managers under the Act. The Act is quite clear that officers and members of the board, whether elected by the unit owners or appointed by the developer, owe a fiduciary duty of care to the unit owners. Therefore, the developer must act in the interest of the unit owners when performing the duties of the interim board, and not in the interest of the development company, or risk liability for breach of fiduciary duty.

The interests of the association itself do not change upon the election of the initial board. Rather, in recognition of the inherent conflict of interest that exists between a development company and a condominium association during the period in which the developer acts as the interim board, the Act provides a measure of protection for condominium associations by imposing a duty on the developer to provide a detailed accounting to the initial board, a duty that is not at issue in the instant case. We find no support in the Act for the proposition that the Association becomes a different entity upon the election of the initial board.

This court has previously construed the section of the Act relating to contracts entered into on behalf of an association prior to the election of the initial board in *Ebert v. Nassau Terrace Condominium, Inc.*, 145 Ill. App. 3d 468, 495 N.E.2d 1063 (1986). In *Ebert*, this court examined the interrelationship between the various bodies indicated in the statute and determined that "a claim against [the unit owners, the association, the board of managers], or the developer, *if acting in his capacity as their agent*, would be a claim against all of them prior to the election of the board." (Emphasis in original.) *Ebert*, 145 Ill. App. 3d at 472, 495 N.E.2d at 1066. The question of agency was at issue in *Ebert* because it was alleged that the developer entered into a contract as the agent of the unincorporated association. This court held that its "analysis of all of section 18.2 of the Act discloses that the developer, *absent other facts indicating the contrary*, acts as an agent or on behalf of the owners of units of an unincorporated association from the date of declaration until the election of the initial board." (Emphasis in original.) *Ebert*, 145 Ill. App. 3d at 472, 495 N.E.2d at 1066.

This holding is consistent with our interpretation of the Act. We note that we are not making a determination as to the developer's potential liability because that issue is not before us. As this court noted in *Ebert*, a claim against the unit owners, the association, the

board, or the developer, while acting as the interim board, is a claim against all of them prior to the election of the initial board. The Act provides that the developer is to act as the interim board of managers on behalf of the Association from the date of declaration until the election of the initial board. The Act further provides that the developer is to have the same duties, obligations, rights and privileges as the board of managers, and is to act as a fiduciary of the unit owners. Therefore, we conclude that the Association had a duty to maintain the common elements of the property prior to the election of the initial board, and the developer acted as the interim board of managers to carry out that duty on behalf of the Association.

Our interpretation of the Act is also supported by the presumption that when enacting a statute, the legislature does not intend an absurd, inconvenient or unjust result. *Rogers*, 204 Ill. 2d at 320, 789 N.E.2d at 1252. If the Association can be held liable for contracts entered into on its behalf before the election of the initial board of managers, it is clear that the Association has obligations in the interim period between the declaration and the first election. It would be an absurd result to determine that the Association has no duty to maintain the property prior to the election of the initial board, but it is liable for contracts entered into on its behalf for the maintenance of the property during that time. Moreover, the assessments that are collected, held and expended as necessary for maintenance or insurance belong to the Association prior to the election of the initial board, not the developer. The Act provides in section 18.2(d) that the developer shall deliver the Association funds to the initial board, and that such funds "shall have been at all times segregated from any other moneys of the developer." 765 ILCS 605/18.2(d)(3) (West 2006).

The Act further imposes the requirement that all condominium association insurance policies must include the following:

> "Commercial general liability insurance against claims and liabilities arising in connection with the ownership, existence, use or management of the property *** insuring the board, the association, the management agent, and their respective employees and agents and all persons acting as agents. The developer must be included as an additional insured in its capacity as a unit owner, manager, board member, or officer." 765 ILCS 605/12(a)(2) (West 2006).

If the legislature intended that the Association would have no duties prior to the election of the initial board, it would not have mandated commercial general liability insurance that would cover the Association, the board, and the developer in his capacity as a board member or officer.

■ Finally, it is important to note that while acting as the interim board, the developer is entitled to the same rights and privileges held by the board of managers. According to the historical and practice notes which follow section 18.2:

> "This means that board members appointed by the developer are entitled to take advantage of the language in many declarations which exonerates board members from liability for acts or omissions, unless they involve fraud or gross negligence. Such language is common in declarations and, as a practical matter, imposes severe limitations on the ability to obtain a judgment for breach of trust against a developer appointed board member." Ill. Ann. Stat., ch. 30, par. 318.2, Historical & Practice Notes (Smith-Hurd Supp. 1986).

See also *Kelley v. Astor Investors, Inc.*, 106 Ill. 2d 505, 478 N.E.2d 1346 (1985). Therefore, the developer acting in his fiduciary capacity enjoys limitations on liability that are coextensive with the liability limitations granted to the board of managers, but the Act does not grant these same limitations to the Association. In fact, we have found no language in the Act that limits or removes the liability of the Association itself once it exists as a legal entity. For all of the foregoing reasons, we determine that the Association had a duty to the plaintiff prior to the election of the initial board of managers and the trial court erred in granting the Association's amended motion to dismiss.

■ We now turn to Glickman's contention that the trial court erred in denying her motion for leave to file an amended complaint. Glickman sought leave to amend her complaint to clarify the agency relationship between Teglia and the Association and to add an additional count against the Association. However, she filed this motion on June 5, 2008, almost five months after the trial court's January 14, 2008, order dismissing the Association from the lawsuit and finding no just reason to delay enforcement or appeal pursuant to Rule 304(a). The trial court correctly noted that pursuant to a Rule 304(a) finding (155 Ill. 2d R. 304(a)), Glickman had 30 days to file a motion with the trial court to reconsider its dismissal order and, if granted, request leave to amend the complaint with respect to the dismissed party. Glickman also had 30 days in which to file a notice of appeal with this court, which she did on February 11, 2008.

As a general rule, the trial court is divested of jurisdiction over a cause upon the filing of a notice of appeal. *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo*, 357 Ill. App. 3d 122, 141, 826 N.E.2d 1135, 1151 (2005). However, under the recently amended version of Supreme Court Rule 303(a)(2) (Ill. S. Ct. R. 303(a)(2) (eff. May 1, 2007)), the trial court retains jurisdiction over a timely filed post-

152

judgment motion. See *J.P. Morgan Chase Bank, N.A. v. Earth Foods, Inc.*, 386 Ill. App. 3d 316, 326, 898 N.E.2d 718, 727 (2008). Because Glickman's motion involved the party that was dismissed from the lawsuit and since it was not filed within the 30 days allowed under Rule 304(a), it was not timely filed and the trial court no longer had jurisdiction over the dismissed party. Therefore, the trial court's denial of Glickman's motion for leave to file an amended complaint is affirmed.

## CONCLUSION

Based on the foregoing analysis, we affirm the order of the trial court denying plaintiff leave to amend her complaint and reverse the order of the trial court granting defendant's motion to dismiss.

Affirmed in part and reversed in part.

O'BRIEN, P.J., and NEVILLE, J., concur.