2014 IL App (1st) 130764
No. 1-13-0764
Opinion filed March 21, 2014

Fifth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| THE HENDERSON SQUARE CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation, and THE BOARD OF MANAGERS OF THE HENDERSON SQUARE CONDOMINIUM ASSOCIATION, as Representative and on Behalf of The Henderson Square Condominium Association, | ) Appeal from the Circuit Court ) of Cook County. ) ) ) ) No. 11 L 011320 ) ) |
| Plaintiffs-Appellants, | ) The Honorable ) Ronald F. Bartkowicz, |
| v. | ) Judge, presiding. ) |
| LAB TOWNHOMES, L.L.C.; LAB LOFTS, L.L.C.; LINCOLN ASHLAND AND BELMONT, L.L.C.; ENTERPRISE DEVELOPMENT COMPANY, INC.; RONALD SHIPKA, SR.; RONALD SHIPKA, JR.; and JOHN SHIPKA, | ) ) ) ) ) ) ) |
| Defendants-Appellees. | ) ) |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justice Taylor concurred in the judgment and opinion.
Justice Palmer specially concurred, with opinion.

**OPINION**

¶ 1        Plaintiffs Henderson Square Condominium Association (Henderson) and Henderson's board of managers (the Board) filed a five-count complaint, arising from the sale of condominium units to plaintiffs by defendant developers. Plaintiffs allege the following

causes of action: (1) breach of the implied warranty of habitability; (2) fraud; (3) negligence; (4) breach of the Chicago Municipal Code's prohibition against misrepresenting material facts in the course of marketing and selling real estate (Chicago Municipal Code § 13-72-030)[1]; and (5) breach of a fiduciary duty.

¶ 2     Defendants' first motion to dismiss was pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)), and addressed only the causes of action for breach of implied warranty of habitability, fraud, and negligence, which were counts I, II, and III of plaintiffs' complaint. Defendants argued that these causes of action were time-barred pursuant to section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214 (West 1996)[2] (providing a 4-year statute of limitations for construction-based claims and a 10-year statute of repose for construction-based claims)). The trial court granted defendants' motion and dismissed the first three counts with prejudice, but also granted plaintiffs leave to replead only counts IV and V,[3] which were for breach of the Chicago Municipal Code and breach of a fiduciary duty.

¶ 3     Plaintiffs filed an amended complaint, which included all five of the original counts, but noted that they were repleading the first three counts solely to preserve them for appeal. Defendants then filed a second motion to dismiss pursuant to both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2010)), arguing that count IV failed to plead a cause of action for breach of the Chicago Municipal Code and that all of plaintiffs' causes of action were time-barred pursuant to section 13-214 of the Code of Civil

---

[1] The dates of the Chicago Municipal Code sections are unavailable, and we therefore are relying on the citations provided by the parties.

[2] Unless noted, cited statutes and code sections have not been amended since 1996.

[3] The trial court's order dismissing the complaint, entered May 10, 2012, does not state that plaintiffs had leave to replead only counts IV and V. However, in plaintiffs' amended complaint, they state that counts I, II, and III are being repled solely for the purpose of preserving them for appeal, and, in the trial court's subsequent order dismissing the amended complaint, the trial court states that it granted plaintiffs leave to replead only counts IV and V.

Procedure (735 ILCS 5/13-214 (West 1996)).  On October 31, 2011, when plaintiffs filed the lawsuit, the Chicago Municipal Code had recently been amended, and the parties disagree as to which version of the Chicago Municipal Code applies.  The parties also disagree about when construction was completed, with defendants arguing that it was complete in 1996 and plaintiffs arguing that the date occurred much later.

¶ 4     The trial court granted defendants' second motion to dismiss with prejudice, finding that plaintiffs failed to plead counts IV and V adequately and that these counts were time-barred.  Although defendants moved to dismiss only count IV as failing to allege a cause of action, the trial court also found that count V failed to allege a cause of action.  In their amended notice of appeal, plaintiffs appeal both the trial court's order on May 10, 2012, dismissing counts I, II, and III, and its order of February 8, 2012, dismissing counts IV and V.  For the following reasons, we reverse.

¶ 5                                    BACKGROUND

¶ 6                                I. Original Complaint

¶ 7                                A. Factual Allegations

¶ 8     Plaintiffs Henderson and Henderson's Board filed their initial complaint on October 31, 2011, in which they allege the following.  Henderson is an Illinois not-for-profit corporation with its principal place of business located in Chicago.  Henderson is the governing body of a property of townhomes located in Chicago, and Henderson is controlled by its Board, which is comprised of elected managers.

¶ 9     Defendants can be divided into three groups that we refer to as (1) the development companies, (2) Enterprise, and (3) the Shipkas.  The development companies are defendants LAB Townhomes, LAB Lofts, and Lincoln, Ashland, & Belmont, which are limited liability

companies incorporated in Delaware. Defendant Enterprise Development Company (Enterprise) is an Illinois corporation with its principal place of business in Chicago. The Shipkas are defendants Ronald Shipka, Sr., Ronald Shipka, Jr., and John Shipka, who are individuals residing in Cook County.

¶ 10    Plaintiffs' original complaint alleges that the Shipkas are in the business of developing residential property, and they own, manage, and operate Enterprise. Plaintiffs further allege that Enterprise represented on its website that it is the "largest and most respected developer" in the Chicago area due to, among other things, its "commitment to rigid quality standards." The Shipkas were chosen by the City of Chicago to be the developers for a project known as the "Lincoln-Belmont-Ashland Redevelopment Project Area." "On information and belief," the Shipkas then formed the development companies. The development companies entered into a contract with the City of Chicago to construct a mixed use project,[4] which included retail space, a parking structure, loft condominiums, and townhouses for $7.5 million. "On information and belief," the development companies entered into an agreement with Enterprise, under which Enterprise would "perform general contracting services to construct the Project or perform other services to assist with the development of the Project."

¶ 11    Prior to the completion of the project, Henderson was established as a condominium association pursuant to the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 1996)) and its creation was recorded with the Cook County recorder of deeds. On June 20, 1996, Henderson was incorporated with the Illinois Secretary of State. The Shipkas designated themselves as Henderson's first board of managers, and during their time as managers, the

---

[4] The record does not disclose whether or not the project is a planned unit development.

Shipkas controlled all of Henderson's funds. The Shipkas turned over control to the first elected Board sometime in 1996.

¶ 12      Plaintiffs allege that defendants began to market and sell individual units of the project in 1996, and, in doing so, they "represented and impliedly warranted that the Property and the Units would be habitable and free from defects." Plaintiffs further allege that the development companies sold the units with a form sales contract, which included a provision stating that the common elements of the project and the units would be "constructed substantially in accordance with the plans and specifications." After the project was completed and owners began to occupy the units, certain units began to experience water seepage and resulting damage.

¶ 13      The Board retained Warton, Inc. (Warton), an exterior restoration consultant and engineer, to investigate the water problem.[5] Warton prepared a report of its findings in which it concluded that "significant" amounts of water were entering into certain units at various locations, including various exterior wall components. Warton further concluded that the "overall quality of construction detailing and workmanship at the specific areas that were investigated was very poor" and that the water penetration problems would be "very difficult, if not impossible," to mitigate unless there was substantial reconstruction of the units.

¶ 14      After the Board reviewed the Warton report, it retained a contractor to solve the problem.[6] In the course of his work, the contractor confirmed that there were "a significant number of deficiencies with the original construction." The contractor reported that the

---

[5] Plaintiffs do not allege in the complaint the date on which they retained Warton. The report submitted by Warton lists the date of issuance as May 18, 2009. Plaintiffs attached the report to the complaint.

[6] Plaintiffs do not allege in the complaint the date on which they hired the contractor or the date on which the contractor submitted his conclusions.

coping[7] leaked, the masonry lacked mortar, there was no flashing or drainage system, the lintels[8] and sills were not sealed, and the roofing systems were defective. Plaintiffs allege that the defects identified by Warton and the contractor could not have been discovered without performing extensive testing of the units or opening up the walls of the common areas and units; "[t]he defects were concealed and, as such, they were not reasonably discoverable to the Unit owners who did not possess special knowledge or skill in the field of construction."

¶ 15    Plaintiffs allege that defendants did not construct the units in a "workmanlike manner or in accordance with the plans and specifications as required." Plaintiffs allege that, "on information and belief," the development companies and Enterprise "knowingly failed" to comply with the plans and specifications, cutting costs for the purpose of realizing greater profits from the city contract.

¶ 16                    B. Count I–Breach of Implied Warranty of Habitability

¶ 17    Plaintiffs first allege a cause of action for breach of implied warranty of habitability against Enterprise and the development companies, but not against the Shipkas. Plaintiffs allege that, in selling the project and the units, defendants impliedly warranted that the units and common areas were "suitable for the use and purpose for which they were intended, namely, as a residence." Defendants breached the implied warranty by "knowingly developing, constructing, and selling the Property with defects in design, workmanship, and materials." These defects caused the units to be unfit and not reasonably suitable for their

---

[7] The record does not define "coping." "Coping" is defined as: "The protective top member of any vertical construction such as a wall or chimney. A coping may be masonry, metal, or wood, and is usually sloped or beveled to shed water in such a way that it does not run down the vertical face of the wall. Copings often project out from a wall with a drip groove on the underside." http://www.dictionaryofconstruction.com/definition/coping.html

[8] The record does not define "lintel." "Lintel" is defined as: "A horizontal supporting member, installed above an opening such as a window or a door, that serves to carry the weight of the wall above it." http://www.dictionaryofconstruction.com/definition/lintel.html

intended residential use. Plaintiffs allege that these defects were latent defects at the time of sale and were not reasonably discoverable by the unit owners. Plaintiffs were required to make substantial repair work and would continue to be required to make further substantial repairs.

¶ 18                                C. Count II–Fraud

¶ 19        Plaintiffs next allege fraud against all defendants. Plaintiffs allege that the Shipkas, through Enterprise and the development companies, were aware that the project was being developed and constructed as a residential property and that it would eventually be sold to unit owners as residences. Defendants represented that the project would be constructed in accordance with plans and specifications, and the common areas and units would be free from defects. However, the project was not constructed in accordance with the plans and specifications, and the common areas and units contained "multiple and significant" defects. Defendants made their representations knowing them to be false, or with a complete disregard for their truth or falsity. Defendants made these representations for the purpose of inducing prospective purchasers to purchase units.

¶ 20                             D. Count III–Negligence

¶ 21        Plaintiffs next allege negligence against defendants Enterprise and the development companies, but not the Shipkas. Plaintiffs allege that Enterprise and the development companies owed a duty to Henderson and the unit owners to develop and construct the project and units in accordance with the plans and specifications, and to construct the project and units to be free from defects. Plaintiff further alleged that Enterprise and the development companies breached their duty "by constructing the [project] and Units with defects in design, workmanship, and materials."

¶ 22                     E. Count IV–Breach of Chicago Municipal Code

¶ 23        Plaintiffs next allege that defendants Enterprise and the development companies, but not the Shipkas, breached section 13-72-030 of the Chicago Municipal Code (the Municipal Code), which states: "No person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell or offer for sale any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation."  Chicago Municipal Code § 13-72-030 (amended Jan. 26, 1993). In the course of selling the units, Enterprise and the development companies represented that the project and the units would be constructed in accordance with the plans and specifications, and would be free from defects.  Section 13-72-100 of the Municipal Code states that "any prospective purchaser, purchaser or owner of a unit" may bring an action to enforce section 13-72-030.  Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993).

¶ 24                        F. Count V–Breach of a Fiduciary Duty

¶ 25        Plaintiffs next allege that all defendants breached their fiduciary duties to the unit owners to pay their share of common expenses and sufficiently fund reserves.  Plaintiffs allege that "[the development companies], Enterprise and/or the Shipkas controlled the Board from the time they formed [Henderson]" until it was turned over to an elected Board in 1996.  During their time on the Board, defendants owed a fiduciary duty to the unit owners.  Section 9(a) of the Illinois Condominium Property Act (765 ILCS 605/9(a) (West 1996)) states:

         "All common expenses incurred and accrued or accrued prior to the first conveyance of a unit shall be paid by the developer, and during this period no common expense

                                              8

assessment shall be payable to the association. It shall be the duty of each unit owner including the developer to pay his proportionate share of the common expenses commencing with the first conveyance. The proportionate share shall be in the same ratio as his percentage of ownership in the common elements set forth in the declaration."

Furthermore, the Condominium Property Act requires that budgets adopted by a condo board "provide for reasonable reserves for capital expenditures and deferred maintenance for repair or replacement of common elements." 765 ILCS 605/9(c)(2) (West 1996).

¶ 26     Plaintiffs allege that defendants failed to fund the common expenses and maintain reserves sufficient to repair the common elements of the project. Failure to do so amounted to a breach of defendants' fiduciary duties to pay their share of common expenses and sufficiently fund reserves.

¶ 27                    II. Defendants' Section 2-619 Motion to Dismiss

¶ 28     As noted, on January 3, 2012, defendants filed their first motion to dismiss, pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). In this motion, defendants addressed counts I, II, and III of the complaint, but did not address counts IV and V. Defendants argued that, pursuant to sections 13-214(a) and (b) of the Illinois Code of Civil Procedure (735 ILCS 5/13-214(a), (b) (West 1996)), plaintiffs' causes of action were time-barred, having been filed more than 14 years after defendants turned over control of Henderson to the Board in 1996.

¶ 29     Section 13-214 applies only to real estate construction claims, and it sets forth specifically for real estate construction claims both (a) a statute of limitations and (b) a

statute of repose. Subsection (a) of section 13-214, which sets forth the statute of limitations, states, in relevant part:

> "Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action or his or her privity knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 1996).

Subsection (b) of section 13-214, which sets forth the statute of repose, states, in relevant part:

> "No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 10 years from the time of such act or omission shall in no event have less than 4 years to bring an action as provided in subsection (a) of this Section." 735 ILCS 5/13-214(b) (West 1996).

For both the statute of limitations and the statute of repose, the section provides an exception for fraud: "The limitations of this Section shall not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action." 735 ILCS 5/13-214(e) (West 1996).

¶ 30      On May 10, 2012, the trial court granted defendants' section 2-619 motion to dismiss with prejudice counts I, II, and III, and granted plaintiffs leave to file an amended complaint concerning counts IV and V.

¶ 31                                III. Amended Complaint

¶ 32                                A. Factual Allegations

¶ 33      On July 2, 2012, plaintiffs filed an amended complaint.  Plaintiffs allege the following facts in addition to those in the original complaint, as described above.

¶ 34      When defendants began marketing the units for sale, they provided prospective purchasers with an information packet (the information packet) which included details about the project, such as building specifications.  The packet, which plaintiffs attached to the amended complaint, stated that "[a]ll insulation shall be soundbatt fiberglass with the following R values: Exterior walls–R11; Third floor ceiling–R30 with integral vapor barrier."

¶ 35      On July 27, 1995, prior to completion of the project, Henderson "was established by the Declaration of Condominium Pursuant to the Condominium Property Act for Henderson Square Condominium [(the Declaration)] which was recorded with the Cook County Recorder of Deeds."  The Declaration, which plaintiffs attached to the amended complaint, specifically contemplated ongoing construction and " 'add on' units."  The Declaration stated that "[the development companies] reserve the right to add additional property ('Additional Property') to the Property, and then submit the Additional Property to the Act by amendment to this Condominium Declaration. *** The right of [the development companies] to add all or any part of the Additional Property shall terminate on the fifth anniversary of the date of the recording of this Declaration [executed July 21, 1995].  Plaintiffs allege that, "[a]ccording to other public filings of [the development companies]," the project remains to be completed,

11

with further construction intended to be undertaken in 2012, or as soon as approved by the City of Chicago. Plaintiffs attached as an exhibit to the amended complaint a notice of a public hearing before the Chicago plan commission, scheduled for July 19, 2012. Defendant Lincoln, Ashland, & Belmont was the applicant listed on the notice.

¶ 36　　　After defendants turned over control of Henderson to the first elected Board sometime in 1996, certain units began to experience water seepage "no later than the winter of 2007/2008." In 2009, plaintiffs retained Warton. After Warton submitted its report, Henderson hired a contractor to begin repair work. It was not until the contractor began repairs, which included opening walls and performing invasive testing on the project, that Henderson discovered a "significant number of latent deficiencies existed with the original construction." Specifically, among other problems,

> "the coping leaked, the masonry lacked mortar, there was no flashing or drainage system, the lintels and sills were not sealed, the exterior walls surrounding masonry openings lacked insulation entirely or lacked adequate insulation, the walls above the top floor ceilings surrounding openings in the roof lacked insulation entirely or lacked adequate insulation, and the walls above the top floor ceilings lacked a proper and integral vapor barrier."

In addition, "the roofing systems were found to be severely defective and required much more work than the original repairs the Board initially undertook and reasonably believed at the time were sufficient to address the water infiltration." In the course of making repairs, plaintiffs discovered that the units lack adequate top-floor ceiling insulation and proper vapor barriers. Plaintiffs would not and could not have discovered these latent defects without extensive testing of and opening the walls of the units.

¶ 37    During their tenure in 1996 as members of the Board, in which they controlled Henderson's funds, defendants failed to maintain adequate reserves to fund repairs. Plaintiffs did not discover this failure until 2009, when the extent of the repair work became evident.

¶ 38                                B. Counts I–III

¶ 39    Plaintiffs' amended complaint states that it realleges counts I through III for the sole purpose of preserving the matters for appeal. Specifically, in the amended complaint, plaintiffs included a parenthetical after the headings for counts I, II, and III which stated that each count had been "dismissed without prejudice on May 10 2012 and [was] being repleaded solely for the purpose of preserving the claim on appeal."

¶ 40              C. Count IV–Breach of the Chicago Municipal Code

¶ 41    As in the original complaint, the amended complaint alleges that defendants Enterprise and the development companies, but not the Shipkas, breached the Municipal Code by making false statements to prospective buyers regarding the project. However, the amended complaint alleges that Enterprise and the development companies, in the course of selling the units, made false material representations in the information packet, which they summarize as:

> "(1) that the Property and the Units reflected 'new architectural energies and solid construction skills';
>
> (2) that the [development companies] and/or Enterprise was committed to 'quality construction and detail' for the Property and the Units;
>
> (3) that the [development companies] and/or Enterprise consistently deliver 'quality buildings' and 'successful developments' which succeed 'architecturally, aethstetically [sic] and economically'; and

(4) 'INSULATION[:] All insulation shall be soundbatt fiberglass with the following R values: Exterior walls–R11; Third floor ceiling–R30 with integral vapor barrier.' "

Plaintiffs allege that Enterprise and the development companies knew and intended the misrepresentations in the information packet to be false.

¶ 42    Section 13-72-030 of the Municipal Code (Chicago Municipal Code § 13-72-030 (amended Jan. 26, 1993)) states that: "No person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell or offer for sale any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation."  Plaintiffs allege that Enterprise and the development companies violated section 13-72-030 by including the false material misrepresentations in the information packet and delivering the information packet to prospective purchasers of the units, with the intent that the prospective purchasers rely on the misrepresentations.  Section 13-72-100 of the Municipal Code provides that purchasers and prospective purchasers may bring an action to enforce section 13-72-030.  Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993).

¶ 43                        D. Count V–Breach of a Fiduciary Duty

¶ 44    In the original complaint, count V alleged that all defendants breached a fiduciary duty. However, in the amended complaint, plaintiffs allege only that the Shipkas breached their fiduciary duty to the unit owners to pay their share of common expenses and to fund sufficient reserves.  Plaintiffs allege that the Shipkas, during their time as members of the Board, failed to fund common expenses and reserves sufficiently to repair the project despite the fact that they knew or should have known that Henderson's obligations could not be met

without sufficient reserve funds. Further, the Shipkas knew or should have known that the project contained extensive defects and that the funding they provided during their tenure on the Board was inadequate to address those defects. The Shipkas also participated in making the above misrepresentations concerning the project, with the intent of deceiving purchasers.

¶ 45                    IV. Defendants' Combined Section 2-619.1 Motion

¶ 46        On August 6, 2012, defendants filed their second motion to dismiss which sought dismissal pursuant to both sections 2-615 and 2-619. The combined motion was filed pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)), which allows parties to file a single motion, containing both a motion pursuant to section 2-615 and section 2-619, so long as each motion is separated into a different part of the document. 735 ILCS 5/2-619.1 (West 2010).

¶ 47                         A. Exhibits Attached to Motion

¶ 48        Defendants argue that plaintiffs failed to attach certificates of occupancy to their complaint. Defendants attach to the motion as exhibits certificates of occupancy to assert that construction was completed on November 27, 1996. Defendants state that "[e]ach certificate states that '[t]hat as of the above referenced date all construction and other work [has] been completed in accordance with approved plans and allowed by permit.' "

¶ 49        Defendants also attach the affidavit of John Shipka, in which he states that all units were conveyed to the original owners by the end of 1996. Defendants argue that these documents "definitively show that more than fourteen years have passed between the time of (a) completion of construction work and turnover of control of [Henderson] ['in late 1996'] and (b) the commencement of [the] lawsuit on October 31, 2011."

¶ 50    Defendants also argue that the public notice attached by plaintiffs to their amended complaint concerned a part of the project not at issue in this case.

¶ 51                           B. Section 2-619 Motion

¶ 52    Again, defendants based their section 2-619 motion on the argument that all of plaintiffs' causes of action are time-barred.  Defendants rely on section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214 (West 1996)) to argue that construction claims are subject to a 4-year statute of limitations and a 10-year statute of repose.  Defendants argue that plaintiffs are "deliberately vague" about when Henderson became aware of the water infiltration problem, arguing that the alleged infiltration of "no later than the winter of 2007/2008" is an attempt to "artfully plead around" the statute of limitations.  Defendants argue that construction was completed in 1996, when the City of Chicago issued certificates of occupancy and when control of Henderson was turned over to the first elected Board. Defendants also contest plaintiffs' allegations that they continued to perform additional construction subsequent to 1996, and argue that the exhibits relied on by plaintiffs to argue that additional construction occurred were made with respect to unrelated and unadjoined properties.

¶ 53    In the alternative, defendants argue that all of plaintiffs' causes of action are time-barred under section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 1996)). Section 13-205 establishes a five-year statute of limitations on actions to "recover damages for an injury done to property, real or personal."  735 ILCS 5/13-205 (West 1996). Defendants argue that plaintiffs failed to allege in their complaint when they first became aware that they might have a cause of action on their hands, and, therefore, plaintiffs cannot

allege that they were unaware that they had a cause of action until within five years from filing the original complaint on October 13, 2011.

¶ 54    In their response, plaintiffs argue that (a) section 13-214 (735 ILCS 5/13-214 (West 1996)) does not apply to their causes of action because their causes of action are based on marketing and fraud, not construction; (b) in the alternative, that section 13-214 specifically excepts causes of action arising out of fraudulent misrepresentation; and (c) that, even without the benefit of the fraud exception, their claims are still timely under both the statute of limitations (735 ILCS 5/13-214(a) (West 1996)) and the statute of repose (735 ILCS 5/13-214(b) (West 1996)).    In addition, plaintiffs argue that the certificates of occupancy defendants attached to their section 2-619.1 motion are unauthenticated and therefore may not be used to prove when construction was completed.  Plaintiffs argue that a question of fact exists as to when the limitations period was triggered.

¶ 55                              C. Section 2-615 Motion

¶ 56    In addition to arguing that all of plaintiffs' causes of action were time-barred, defendants also moved to dismiss count IV pursuant to section 2-615 on the ground that it failed to state a  cause of action.

¶ 57    Defendants argue that count IV, alleging that they violated the Municipal Code, must be dismissed because the Municipal Code does not provide for damages in a private cause of action to enforce section 13-72-030.  Defendants argue that plaintiffs rely on section 13-72-100 (Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993)) as the basis for their private cause of action to enforce section 13-72-030 (Chicago Municipal Code § 13-72-030 (amended Jan. 26, 1993)).  Section 13-72-100 allows for private parties to file a cause of action to seek compliance with chapter 13-72 of the Municipal Code and, if successful,

17

recover their attorneys fees. Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993). Section 13-72-110 provides the monetary fines to which violators of chapter 13-72 may be subject. Chicago Municipal Code § 13-72-110 (amended Jan. 26, 1993). Section 13-72-100 states that only the City of Chicago may enforce the provisions of section 13-72-110. Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993). Defendants therefore argue that private parties may file a lawsuit solely to "seek compliance" with the Municipal Code, and may not seek monetary damages, and that only the City of Chicago may collect money from parties that breach the Municipal Code, in the form of fines.

¶ 58    Although section 13-72-100 currently states that prevailing parties "shall be entitled to recover, in addition to any other remedy available, his damages and reasonable attorney's fees," defendants observe that section 13-72-100 was recently amended. Chicago Municipal Code § 13-72-100 (amended May 4, 2011). The previous version, which defendants argue was in effect at the time plaintiffs filed their original complaint, states that prevailing parties "shall be entitled to recover, in addition to any other remedy available, his reasonable attorney fees." Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993). Defendants argue that the inclusion of the word "damages" in the amended version of section 13-72-100 (Chicago Municipal Code § 13-72-100 (amended May 4, 2011)) where it was not previously included indicates that, until the Municipal Code was amended, it did not allow private parties to recover damages in lawsuits based on chapter 13-72. The parties disagree as to which version of the Municipal Code applies to this case. Furthermore, plaintiffs argue that, even if the prior version of the Municipal Code applies, section 13-72-100 allowed for private parties to recover damages for violations of section 13-72-030. Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993).

18

¶ 59                    V. The Trial Court's Ruling

¶ 60        On February 8, 2012, the trial court granted defendants' second motion and dismissed the amended complaint with prejudice.  The trial court found both: (1) that plaintiffs' causes of action were time-barred; and (2) that plaintiffs failed to allege sufficient facts to state a cause of action in both counts IV and V.  The trial court stated in its order that the only causes of action before it were counts IV and V because its previous order dismissed the complaint in its entirety but gave plaintiffs leave to replead counts IV and V.  Although defendants' section 2-615 motion addressed only count IV and not count V, the trial court included a section 2-615 analysis of count V.  The parties have therefore briefed the issue of whether plaintiffs failed to state a cause of action for breach of a fiduciary duty, and we will review whether the trial court erred in concluding that count V failed to state a cause of action for breach of a fiduciary duty.  The trial court acknowledged that plaintiffs included counts I, II, and III in their amended complaint solely for the purpose of preserving them for appeal.

¶ 61                         A. Time-Barred

¶ 62        Although plaintiffs argued that their causes of action were based on the marketing of the units, and thus the construction-based statute of limitations and the statute of repose did not apply, the trial court found that plaintiffs' causes of action were based in construction because plaintiffs sought to recover the cost to repair the alleged deficiencies.

¶ 63        The trial court found that "[t]here are no allegations in the [amended] Complaint that the Project was unfinished or that Defendants were still doing construction on the Project" within 10 years of the issuance of the Warton report.[9]  The trial court did not find that the fraud

---

[9] We note that plaintiffs did in fact allege, and attach documents to support the allegations, that construction on the project continued well past 10 years from the issuance of the Warton report.

exception to the statute of limitations and statute of repose applied because plaintiffs failed to allege facts with the necessary particularity to support a claim for fraud.

¶ 64      Furthermore, plaintiffs allege that defendants were silent with regard to the construction defects, and silence is not enough to support a claim for fraud unless the defendant owes the plaintiff a fiduciary duty. The trial court found that defendant Shipkas did not owe plaintiffs a fiduciary duty in their role as "general contractor, constructor or landowner." The only fiduciary duty owed by defendants[10] arose from their role as members of the Board, and that duty "was limited to securing funds, expenses and/or reserves sufficient to repair the common elements of property."

¶ 65      The trial court thus found that the complaint was time-barred.

¶ 66                          B. Failure to State a Cause of Action

¶ 67      In addition to finding that the counts were time-barred, the trial court also dismissed counts IV and V on the ground that they failed to state a cause of action.

¶ 68                              i. Count IV

¶ 69      First, the trial court also found that count IV, alleged against Enterprise and the development companies but not the Shipkas, failed to allege facts with the necessary particularity to assert a cause of action for misrepresentation under section 13-72-030 of the Municipal Code. Chicago Municipal Code § 13-72-030 (amended Jan. 26, 1993). Some of the objected-to "misrepresentations," such as the defendants being committed to "quality construction and detail" and that the project reflected "new architectural energies and solid

---

[10] The amended complaint alleges breach of fiduciary duty against only the Shipkas. However, the trial court's language in the section concerning the breach of fiduciary duty claim refers only to "Defendants," and does not distinguish between the Shipkas, the development companies, and Enterprise.

construction skills" are "not the sort of specific statements which form the basis of a misrepresentation claim."

¶ 70    The statements regarding the type of insulation to be used were also not actionable because section 13-72-030 "applies to misrepresentations of pre-existing facts, and therefore does not apply to a promise to perform future conduct.  Here, with regard to insulation, [defendants] merely stated what specifications they intended to use and made no misrepresentations of what specifications were actually used."  The trial court found that the information packet included a disclaimer stating that "[t]he above listed specifications are subject to revisions deemed advisable by the developer or architect, or required by law."  Therefore, the trial court concluded that plaintiffs failed to state a cause of action for violation of section 13-72-030 of the Chicago Municipal Code, and it dismissed count IV with prejudice.

¶ 71                                                   ii. Count V

¶ 72    Finally, the trial court found that count V failed to state a cause of action for breach of a fiduciary duty by defendant Shipkas.  The trial court found that the Shipkas controlled the Board for only a "short period of time" in 1996, and that plaintiffs allege that they breached their fiduciary duty by failing to fund expenses and reserve sufficient funds to make repairs in 2009.  The trial court found that defendants "had no duty to maintain fund[s] on behalf of the condominium in 2009," and thus dismissed count V with prejudice.

¶ 73    Plaintiffs filed a timely notice of appeal and then an amended notice of appeal.  The amended notice of appeal concerned both the trial court's original order entered on May 10, 2012, dismissing counts I, II, and III, and the trial court's second order entered on February 8, 2013, dismissing counts IV and V.  This appeal followed.

¶ 74                                                    ANALYSIS

¶ 75        On appeal, plaintiffs argue: (1) that the trial erred in finding that all five counts of their complaint were time-barred under section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214 (West 1996)); and (2) that the trial court erred in finding that plaintiffs failed to state causes of action for counts IV and V. For the following reasons, we reverse and remand for further proceedings.

¶ 76                                             I. Standard of Review

¶ 77        Section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)) "allows a party to file a motion combining a section 2-615 motion to dismiss with a section 2-619 motion to dismiss." *Cove Management v. AFLAC, Inc.*, 2013 IL App (1st) 120884, ¶ 20. A section 2-615 motion to dismiss tests the legal sufficiency of the complaint and examines whether the complaint adequately states a cause of action upon which relief may be granted. *Cove Management*, 2013 IL App (1st) 120884, ¶ 20. By contrast, a section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative matter outside of the complaint, which the movant argues defeats the cause of action. *Cove Management*, 2013 IL App (1st) 120884, ¶ 20.

¶ 78        When ruling on a section 2-615 motion or a section 2-619 motion, "a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. However, "a court cannot accept as true mere conclusions unsupported by specific facts." *Patrick Engineering*, 2012 IL 113148, ¶ 31. "Our review of a dismissal under either section 2-615 or [section] 2-619 is *de novo*." *Patrick Engineering*, 2012 IL 113148, ¶ 31. *De novo* consideration means

we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 79    Although the trial court ruled that counts I, II, and III were untimely based solely on the factual allegations contained in the original complaint, we will also consider the additional factual allegations contained in the amended complaint with respect to counts I, II, and III because: (1) of judicial economy; (2) the trial court had the amended complaint in front of it at the time that it dismissed the entire complaint with prejudice; and (3) our standard of review in this matter is *de novo* (*Patrick Engineering*, 2012 IL 113148, ¶ 31).

¶ 80                    II. The Complaint Was Not Time-Barred

¶ 81    We first examine plaintiffs' argument that the trial court improperly granted defendants' section 2-619 motion to dismiss as time-barred all five counts of the complaint: (1) breach of the implied warranty of habitability; (2) fraud; (3) negligence; (4) violation of the Chicago Municipal Code; and (5) breach of a fiduciary duty. Plaintiffs first argue that the trial court erroneously applied section 13-214 to counts IV and V. Plaintiffs next argue that all counts are timely under the section 13-214 limitations period, including counts IV and V, assuming, *arguendo*, that the section 13-214 limitations period is the correct limitations period to apply to those counts. Finally, plaintiffs argue that even if their causes of action are not timely, they are excepted from the section 13-214 limitations period by the section 13-214(e) fraud exception. For the following reasons, we find defendants' argument persuasive that the construction-based statute of limitation and repose apply to plaintiffs' claims. However, we also find plaintiffs' arguments persuasive that the fraud exception applies, and, thus, reverse the decision of the trial court.

¶ 82    Section 2-619 affords a means of obtaining summary disposition of issues of law or of easily proven issues of fact. Disputed questions of fact must be decided by the trier of fact. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Section 2-619 motions admit the legal sufficiency of the complaint, and courts accept as true all well-pleaded facts and any reasonable inferences drawn therefrom. *Patrick Engineering*, 2012 IL 113148, ¶ 31. When the appellate court reviews a dismissal under section 2-619, it must "consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Hodge*, 156 Ill. 2d at 116-17. In ruling on a motion under section 2-619, the trial court may consider pleadings, depositions, and affidavits. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004). When supporting affidavits are not challenged or contradicted by counteraffidavits or other appropriate means, the facts stated therein are deemed admitted. *Raintree Homes*, 209 Ill. 2d at 262.

¶ 83    Defendants argue that the complaint is time-barred under section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214 (West 1996)), which sets forth statutes of limitation and repose for real estate construction claims. Section 13-214 applies to actions arising from acts or omissions in the "design, planning, supervision, observation or management of construction, or construction of an improvement to real property." 735 ILCS 5/13-214 (West 1996).

¶ 84                          A. Proper Limitations Period

¶ 85    Plaintiffs first argue that section 13-214 does not apply to counts IV and V because those counts do not arise from construction-related activities. Plaintiffs argue that section 13-205 (735 ILCS 5/13-205 (West 1996)) applies to their causes of action. Section 13-205 states:

24

"[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 1996).

Plaintiffs point out that, unlike section 13-214, section 13-205 does not include a repose provision.

¶ 86    Plaintiffs argue that their causes of action are not based in construction, and thus subject to the limitations periods mandated by section 13-214, because the "nature of the liability" is what dictates which limitations period applies, rather than the "nature of relief sought." *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466-67 (2008); *Armstrong v. Guigler*, 174 Ill. 2d 281, 286 (1996).

¶ 87    Plaintiffs rely on *Bowman* to support their argument. In *Bowman*, the plaintiff surety filed a lawsuit against the defendants, the president and shareholder of a metalworking firm. *Bowman*, 229 Ill. 2d at 464. The plaintiff was the successor-in-interest of performance bonds issued to the defendants regarding three metalworking assignments. *Bowman*, 229 Ill. 2d at 464. The defendant had signed a general indemnity agreement in consideration for the performance bonds. *Bowman*, 229 Ill. 2d at 464. The plaintiff alleged that it incurred losses, costs, and expenses resulting from claims against the performance bonds resulting from the defendants breaching the underlying construction contracts. *Bowman*, 229 Ill. 2d at 464. The defendants moved to dismiss the lawsuit, arguing that it was time-barred by section 13-214. *Bowman*, 229 Ill. 2d at 464. The plaintiff responded that its cause of action was subject

25

to a 10-year statute of limitations applicable to written contracts under section 13-206 (735 ILCS 5/13-206 (West 2004)) because the cause of action arose from a written indemnity agreement. *Bowman*, 229 Ill. 2d at 465. Our Illinois Supreme Court found that the defendants' liability was premised on the breach of a written agreement, rather than on the non-performance of construction work. *Bowman*, 229 Ill. 2d at 468. Therefore, the 10-year statute of limitations on written contracts, pursuant to section 13-206, was the appropriate limitations period. *Bowman*, 229 Ill. 2d at 268. Our Illinois Supreme Court further found that "[t]o constitute an action for 'an act or omission *** in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property' within the meaning of section 13-214, *liability must rest on a construction-related activity*." (Emphasis added.) *Bowman*, 229 Ill. 2d at 269 (quoting 735 ILCS 5/13-214 (West 2004)).

¶ 88    Plaintiffs argue that defendants' liability is premised not on the construction of the property but on defendants' obligations under the Chicago Municipal Code to provide accurate information about the project, and the Illinois Condominium Property Act to properly budget for and fund the reserves. We do not find plaintiffs' arguments persuasive.

¶ 89    Defendants cite to *Blinderman Construction Co. v. Metropolitan Water Reclamation District of Greater Chicago*, 325 Ill. App. 3d 362 (2001), to argue that counts IV and V do arise from construction activities and are therefore subject to the limitations period set forth in section 13-214. In *Blinderman*, the plaintiff contractor filed a lawsuit against the defendant for breach of a construction contract, alleging that the defendant had not fully paid the plaintiff for its services. *Blinderman*, 325 Ill. App. 3d at 363-64. The defendant moved to dismiss the complaint as time-barred under section 13-214. *Blinderman*, 325 Ill. App. 3d

26

at 364. In response, the plaintiff argued that the 10-year statute of limitation for written contracts under section 13-206 was the appropriate limitations period. *Blinderman*, 325 Ill. App. 3d at 364. This court found that section 13-214 provided the applicable limitations period because, under the plain language of section 13-214, the limitations period extends to "acts or omissions in the supervision or management of construction," and the section therefore "becomes applicable to actions for recovery of payments due under the contract for work engendered by the [defendant] in its capacity as supervisor and/or manager of construction." *Blinderman*, 325 Ill. App. 3d at 366-67. We found that the defendant exercised supervisory or managerial control over the construction, which included the power under the contract to order additional work and to direct the time at which it was performed. *Blinderman*, 325 Ill. App. 3d at 367. This court relied on the fact that the lawsuit "invoke[d] the liability of the [defendant] for actions taken within the scope of *its managerial and supervisory function*." (Emphasis added.) *Blinderman*, 325 Ill. App. 3d at 368. Furthermore, we found that there was "a direct nexus between the activities of the defendant and the plaintiff's cause of action in that the cause is predicated on the construction activities in which the defendant was engaged as enumerated in section 13-214(a)." *Blinderman*, 325 Ill. App. 3d at 370.

¶ 90    This court distinguished *Armstrong v. Guigler*, 174 Ill. 2d 281, 286 (1996), which the plaintiff relied on to state that it is the nature of liability that determines which limitations period applies. *Blinderman*, 325 Ill. App. 3d at 370. The plaintiff argued that the nature of liability was the defendant's failure to pay money owed under the contract, rather than any construction activities. *Blinderman*, 325 Ill. App. 3d at 370. We found that *Armstrong* was distinguishable because it concerned whether the 10-year statute of limitations for written

27

contracts under section 13-206 or the 5-year statute of limitations for civil actions not otherwise provided for under section 13-205 applied. *Armstrong*, 174 Ill. 2d at 283. We determined that such a decision did rely on the characterization of the action, but held that the determination at issue in *Blinderman* was governed by *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252 (1986), a different decision from the Illinois Supreme Court. In *Skinner*, our Illinois Supreme Court held that section 13-214, on its face, protects anyone who engages in the activities enumerated in the statute–design, supervision, observation or management of construction. *Skinner*, 114 Ill. 2d at 261. As a result, we found that section 13-214 applied. *Blinderman*, 325 Ill. App. 3d at 372.

¶ 91        *Blinderman* was later distinguished by this court in *Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 404 Ill. App. 3d 658 (2010). Like *Bowman*, the cause of action in *Water Tower* concerned the breach of an indemnity agreement by a defendant that had engaged in construction. *Water Tower*, 404 Ill. App. 3d at 660. This court found that *Blinderman* was distinguishable because the cause of action in *Water Tower* was based on the defendant's role as an indemnitor, not the defendant's role in its capacity as supervisor and manager of construction. *Water Tower*, 404 Ill. App. 3d at 665. Therefore, we find that *Water Tower* and *Bowman*, which concerned causes of action predicated on the defendants' roles as indemnitors, and not on their roles engaged in the activities enumerated in section 13-214, are inapposite to this case.

¶ 92        In the case at bar, the causes of action arise from activities enumerated in section 13-214. The material misrepresentations concerned the construction of the project, and the fiduciary duty at issue is based on defendants' failure to budget for necessary repairs when they knew

that repairs would be needed as a result of inadequate construction methods and materials. Therefore, we find that section 13-214 provides the appropriate limitations period.

¶ 93                                    B. Fraud Exception

¶ 94       Plaintiffs next argue that all of their causes of action were timely filed. The parties dispute when the limitations period began to run and when construction on the project was completed. However, we need not determine when these events occurred because we have found that the fraud exception of section 13-214(e) had been triggered.

¶ 95       Subsection (a) of section 13-214 imposes a 4-year statute of limitations; and subsection (b) of section 13-214 imposes a 10-year statute of repose, but also states that "any person who discovers such act or omission prior to expiration of 10 years from the time of such act or omission shall in no event have less than 4 years to bring an action." 735 ILCS 5/13-214(b) (West 1996). Section 13-214(e) states that the "limitations of this Section shall not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action." 735 ILCS 5/13-214(e) (West 1996). Fraudulent concealment stops the running of the limitations period until the cause of action is discovered. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 41 (holding that section 13-214(e) excludes fraud-based causes of action from the statutes of limitations and repose codified in section 13-214(a) and (b)); *Eickmeyer v. Blietz Organization, Inc.*, 284 Ill. App. 3d 134, 140 (1996). Plaintiffs have argued that defendants fraudulently concealed the causes of action.

¶ 96       Our Illinois Supreme Court has addressed the nature of statutes of repose and their effects on terminating potential litigation. In *DeLuna v. Burciaga*, 223 Ill. 2d 49, 71 (2006), the supreme court held that although "a statute of repose is intended to terminate the possibility

of liability after a defined period of time, *regardless of* a potential plaintiff's lack of knowledge of his or her cause of action *** there would be an obvious and gross injustice in a rule that allows a defendant [citation] to conceal the plaintiff's cause of action and then benefit from a statute of repose." (Emphasis in original.) We must therefore examine whether or not defendants' actions amounted to fraudulent concealment of plaintiffs' causes of action.

¶ 97    In *Eickmeyer*, this court relied on a federal district court decision, *Reichelt v. Urban Investment & Development Co.*, 577 F. Supp. 971 (N.D. Ill. 1984), to find that the statute of repose is tolled when a cause of action has been fraudulently concealed. *Eickmeyer*, 284 Ill. App. 3d at 141. In *Reichelt*, the plaintiff alleged causes of action for (1) breach of the implied warranty of habitability and (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (now see 875 ILCS 505/1 *et seq.* (West 2010)) against the contractor defendants for structural defects arising from the faulty construction of a residence. *Reichelt*, 577 F. Supp. at 973. The plaintiff further alleged that the defendants intentionally and fraudulently concealed the defects. *Reichelt*, 577 F. Supp. at 973. The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the causes of action were time-barred because they were filed 14 years after construction of the residence. *Reichelt*, 577 F. Supp. at 973. The federal District Court for the Northern District of Illinois analyzed the statute of repose codified in section 13-214(b), and found that, while the causes of action would normally be time-barred, if a defendant fraudulently conceals a cause of action, the limitations period will be tolled. *Reichelt*, 577 F. Supp. at 974. The court found that the plaintiff pleaded two affirmative acts which, if proven at trial, may have prevented plaintiff from discovering the defects. *Reichelt*,

577 F. Supp. at 974. As a result, the court determined that the statute of repose did not apply and the causes of action were not time-barred. *Reichelt*, 577 F. Supp. at 974-75. In *Eickmeyer*, this court factually distinguished *Reichelt*, finding that the plaintiff had not adequately pleaded the existence of fraudulent concealment necessary to toll the statute of repose. *Eickmeyer*, 284 Ill. App. 3d at 141-42. However, although this court *factually* distinguished *Reichelt*, we accepted the reasoning expressed in the federal decision and found it to be instructive. *Eickmeyer*, 284 Ill. App. 3d at 143. A similar result occurred in *Village of Fox Lake v. Aetna Casualty & Surety Co.*, 178 Ill. App. 3d 887, 913 (1989).

¶ 98     In the case at bar, plaintiffs argue that the problems with the property were latent defects. This court in *Board of Education of Maine Township High School District 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 20 (1997), found that the term "latent defect" is defined as a defect that is "hidden and not readily observable or discoverable to any but the most searching examination." A latent defect is not limited to inherent defects in the materials used in construction, but could also result from improper design or faulty construction methods. *Maine Township*, 292 Ill. App. 3d at 20. In making its determination as to the meaning of "latent defect," this court relied on Webster's Dictionary, Black's Law Dictionary, and the Illinois Supreme Court. *Maine Township*, 292 Ill. App. 3d at 19-20 (citing Webster's Third New Dictionary 1275 (1986) (defining "latent defect" as "an unknown defect *** not discoverable by such inspection or test as the law reasonably requires under all the circumstances"), Black's Law Dictionary 883 (6th ed. 1990) (defining "latent defect" as a hidden or concealed defect not discoverable by reasonable and customary inspection or ordinary care), and *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 38-

40 (1979) (defining latent defect as one that is not readily discoverable through reasonable and diligent inspection)).

¶ 99     The presence of latent defects, by themselves, are not sufficient to circumvent the statute of repose under the section 13-214(e) fraud exception.  For example, in *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426 (1997), our supreme court considered whether a cause of action involving a latent defect was barred by the statute of repose.  The supreme court found that the plaintiff had successfully pleaded a cause of action for breach of the implied warranty of habitability because a latent defect existed.  *VonHoldt*, 175 Ill. 2d at 432.  However, the plaintiff filed the lawsuit 11 years after construction was completed.  *VonHoldt*, 175 Ill. 2d at 433.  The supreme court concluded that lawsuit was time-barred by the statute of repose.  *VonHoldt*, 175 Ill. 2d at 434.

¶ 100     To assert that a defendant engaged in fraudulent concealment, plaintiffs must show an affirmative misrepresentation or, in the absence of an affirmative misrepresentation, deceptive conduct resulting in an act of concealment.  *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 270 (1993).  A "seller's silence in not disclosing defects, standing alone, does not give rise to a cause of action for misrepresentation.  Silence must be combined with active concealment."  *Mitchell v. Skubiak*, 248 Ill. App. 3d 1000, 1005 (1993).  However, silence combined with deceptive conduct or the suppression of material facts results in active concealment, and then the seller has a duty to speak.  *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n*, 389 Ill. App. 3d 951, 958 (2009).

¶ 101     In *Skubiak*, during a walk-through inspection of a residence, the plaintiffs observed cracks in the master bedroom.  *Skubiak*, 248 Ill. App. 3d at 1005.  In their complaint, the

plaintiffs alleged that the defendants explained that the cracks were the result of natural variances in temperature and humidity, and, as a result, the plaintiffs made no further investigation into the cracks. *Skubiak*, 248 Ill. App. 3d at 1005. The plaintiffs also alleged that the defendants knew that the cracks were instead the result of structural defects in the roof and that the defendants knew that the source of the cracks was not readily apparent or discoverable. *Skubiak*, 248 Ill. App. 3d at 1005. This court found that the plaintiffs had adequately pleaded facts which, if proven, could support a finding of fraud. *Skubiak*, 248 Ill. App. 3d at 1006. The defendants had a duty to reveal the true nature of the cracks *once plaintiffs addressed them*. *Skubiak*, 248 Ill. App. 3d at 1006.

¶ 102    In the case at bar, defendants argue that there were no misrepresentations or actions which could support a finding of fraudulent concealment. Plaintiffs' amended complaint alleges that defendants made misrepresentations through the packet given to prospective purchasers, and that defendants engaged in deceptive conduct, such as failing to budget properly for reserves despite defendants' knowledge that the property would soon need extensive repairs. In other words, plaintiffs argue that defendants concealed the true nature of the building by funding the reserve at a level that suggested the building was in better condition than it was.

¶ 103    Although plaintiffs do not allege in the case at bar that defendants ever made false representations in response to direct questions by the subsequent board or unit owners, defendants were more than silent, as required by *Skubiak* and *Fichtel*. The amended complaint alleges that the packet issued by defendants to market the project included specifications regarding the insulation to be used in constructing the project. The packet is attached to the amended complaint and states that insulation would be included in the

exterior walls and in the third floor ceiling. However, the Warton report, which is attached to the amended complaint, concluded that the exterior walls and third floor ceiling either *lacked insulation entirely* or lacked adequate insulation. There is no dispute that defendants used the packet to market the project, and the representation that the project would include specific grades of insulation would likely encourage prospective purchasers not to make further inquiries into the type of insulation used in the project. See *Skubiak*, 248 Ill. App. 3d at 1005; *Fichtel*, 389 Ill. App. 3d at 958. Therefore, plaintiffs have pleaded adequate facts to raise a question of whether defendants owed them a duty to reveal that, contrary to the representations made in the packet, exterior walls and third floor ceiling lacked insulation entirely or lacked sufficient insulation. *Skubiak*, 248 Ill. App. 3d at 1006.

¶ 104      The trial court found that defendants were covered by a disclaimer in the packet that stated that "[t]he above listed specifications are subject to revisions deemed advisable by the developer or architect, or required by law." We cannot find that such a disclaimer would cover defendants for the sections of the exterior wall and third-floor ceiling where insulation was missing entirely, or those sections that used insulation of a different grade than that advertised in the packet. The packet advertised insulation, placing prospective purchasers on notice that the project would contain insulation. If plaintiffs' allegations are true, and for the purpose of a section 2-619 motion we must accept them as such, plaintiffs have raised the question of whether defendants had a duty not to be silent about the missing insulation. *Skubiak*, 248 Ill. App. 3d at 1006; *Fichtel*, 389 Ill. App. 3d at 958.

¶ 105      Next, plaintiffs argue that defendants' insufficient funding of the reserves amounted to concealment. Section 9(c)(2) of the Condominium Property Act (the Act) (765 ILCS 605/9(c)(2) (West 1996)) states that "[a]ll budgets adopted by a board of managers *** shall

34

provide for reasonable reserves for capital expenditures and deferred maintenance for repair or replacement of the common elements." A board of managers shall determine what is reasonable by examining various factors, including "the repair and replacement cost, and the estimated useful life, of the property which the association is obligated to maintain." 765 ILCS 605/9(c)(2) (West 1996). What constitutes reasonably budgeting for reserves is a question of fact to be decided by the trier of fact. *Board of Managers of Weathersfield Condominium Ass'n v. Schaumberg Ltd. Partnership*, 307 Ill. App. 3d 614, 623 (1999).

¶ 106    The trial court found that defendants did owe plaintiffs a fiduciary duty to budget properly for and fund reserves during their time controlling the Board, prior to turning the Board over to plaintiffs. Plaintiffs argue that defendants knew that extensive repairs would be required to fix the latent defects caused by the inadequate construction techniques, and that defendants' failure to budget for these repairs amounted to concealment. Plaintiffs argue that, by budgeting reserves at the level they did, defendants were making a statement about the estimated useful life and condition of the project, and plaintiffs therefore did not make further inquiry into the condition of the property. See *Skubiak*, 248 Ill. App. 3d at 1005. See also 765 ILCS 605/9(c)(2) (West 1996). Plaintiffs have therefore raised a question of fact: did defendants' concealment of the insulation lead to their failure to reasonably fund the reserves? See *Weathersfield*, 307 Ill. App. 3d at 623; *Skubiak*, 248 Ill. App. 3d at 1005. Therefore, we find that these issues of material fact should have precluded dismissal under section 2-619.

¶ 107                    III. Failure to State a Claim in Counts IV and V

¶ 108       We next examine whether the trial court erred in dismissing counts IV and V pursuant to

section 2-615 for failing to state a cause of action.  For the following reasons, we reverse the

trial court's decision.

¶ 109                         A. Count IV–Chicago Municipal Code

¶ 110       Plaintiffs allege in count IV that defendants breached the Chicago Municipal Code by

making false statements to prospective buyers regarding the project.  The parties disagree,

first,  about whether plaintiffs may seek money damages for defendants' alleged violation of

section 13-72-030 of the Chicago Municipal Code.  Section 13-72-100 concerns remedies for

causes of action filed under chapter 13-72 of the Chicago Municipal Code.  Although section

13-72-100 of the Chicago Municipal Code currently states that prevailing parties "shall be

entitled to recover, in addition to any other remedy available, his damages and reasonable

attorney's fees" (Chicago Municipal Code §13-72-100 (amended May 4, 2011)), defendants

argue that, at the time plaintiffs filed their lawsuit, section 13-72-100 stated that prevailing

parties "shall be entitled to recover, in addition to any other remedy available, his reasonable

attorney fees" (Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993)).  Defendants

argue that the inclusion of "damages" in the amended version of section 13-72-100 (Chicago

Municipal Code § 13-72-100 (amended May 4, 2011)) where it was not previously included

indicates that, until the Municipal Code was amended, it did not allow private parties to

recover damages in lawsuits based on chapter 13-72.

¶ 111       We found only one previous case concerning section 13-72-100 of the Chicago

Municipal Code, *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505.

*Palm* concerned an action for injunctive relief rather than money damages and, therefore, we

36

find it inapplicable to determining how to interpret the section in the case at bar. However, we do find our recent case of *Wolinsky v. Kadison*, 2013 IL App (1st) 111186,[11] instructive. In *Wolinsky III*, the plaintiff filed a lawsuit alleging, in part, a violation of a section of the Chicago Municipal Code which prohibited discrimination in the purchase or lease of a condominium on the basis of sex or marital status. *Wolinsky III*, 2013 IL App (1st) 111186, ¶ 8. The relevant section stated as follows with regard to remedies:

> " 'The rights, obligations and remedies set forth in this chapter shall be cumulative and in addition to any others available at law or equity. The Department or any prospective purchaser, purchaser or owner of a unit *may seek compliance* of any provision of this chapter, provided, however, that only the Department may enforce the provisions of Section 100.2-11.[12] In any action brought to enforce any provision of this chapter except Section 100.2-11 the prevailing party shall be entitled to recover, *in addition to any other remedies available, his reasonable attorney fees*.' " (Emphases added.) *Wolinsky III*, 2013 IL App (1st) 111186, ¶ 36 (quoting Chicago Municipal Code, ch. 100.2-10 (1978)).

The remedies language in this code section is very similar to the language used in the unamended section 13-72-100, which states that "any prospective purchaser, purchaser or owner of a unit may seek compliance of any provision of this chapter," and that "the prevailing plaintiff shall be entitled to recover, in addition to any other remedy available, his reasonable attorney fees." Chicago Municipal Code § 13-72-100 (amended Jan. 26, 1993).

---

[11] *Wolinksy* was the third appeal in the case, and we shall refer to it as *Wolinsky III*. *Wolinksy III*, 2013 IL App (1st) 111186, ¶ 2.

[12] Section 100.2-11 provided for the imposition of mandatory monetary penalties for violations of the condominium ordinance and incarceration for repeated offenses. Chicago Municipal Code, ch. 100.2, par. 100.2-11 (1978).

¶ 112    In *Wolinsky III*, we found that " 'the broad provision that remedies under the ordinance be cumulative and in addition to other remedies reflects a legislative intent that actions for damages be available for violations of any section of the ordinance, including the antidiscrimination section.' "    *Wolinsky III*, 2013 IL App (1st) 111186, ¶ 40 (quoting *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 535 (1983) (*Wolinsky I*)).    Since the relevant language used in the previous version of section 13-72-100 is virtually identical to the relevant language in the *Wolinsky* section, we find that, even though the previous version of section 13-72-100 did not explicitly mention an action for damages, the section did provide for damages.

¶ 113    We next examine whether or not plaintiffs adequately pleaded a cause of action under section 13-72-030 of the Chicago Municipal Code.  The parties have not cited any cases that analyze section 13-72-030, and we are unable to find any ourselves.  Therefore, we must turn to alternative methods of analysis.

¶ 114    The trial court found that, because section 13-72-030 of the Chicago Municipal Code "appears to prohibit misrepresentations or omissions of fact *** it is similar to a fraud claim."  The trial court found that the statements regarding the type of construction methods used to build the property were "not the sort of specific statements which form the basis of a misrepresentation claim."  The trial court also found that the statements regarding the type of insulation to be used was not actionable.  The trial court found that, "[s]imilar to a fraud claim, the language of Section 13-720-030 [*sic*] applies to misrepresentations of pre-existing facts, and therefore does not apply to a promise to perform future conduct.  Here, with regard to insulation, the Defendants merely stated what specifications they intended to use and made no misrepresentations of what specifications were actually used."

¶ 115        Plaintiffs ask that we compare section 13-72-030 to the Residential Real Property Disclosure Act (the Disclosure Act) (765 ILCS 77/1 *et seq.* (West 2010)).  Plaintiffs argue that the Disclosure Act serves a similar role as section 13-72-030 of the Chicago Municipal Code, which is to protect prospective purchasers of real property.  Under the Disclosure Act, sellers of residential property must complete a statutorily prescribed disclosure form and deliver it to prospective purchasers.  765 ILCS 77/20, 35 (West 2010).  The disclosure form includes questions about defects to the real property.  765 ILCS 77/35 (West 2010).  Section 45 of the Disclosure Act states that it is not "intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction."  765 ILCS 77/45 (West 2010).

¶ 116        Plaintiffs cite to various cases to argue how we should interpret section 13-72-030 of the Chicago Municipal Code.  In *Anderson v. Klasek*, 393 Ill. App. 3d 219, 224 (2009), the defendant seller argued that the Disclosure Act (765 ILCS 77/1 *et seq.* (West 2002)) amounts to a codification of common law fraud.  The appellate court disagreed, citing section 45 of the Disclosure Act.  The court found that, under section 45, claimants retain "the rights which existed at common law but, in addition, can now sue under the Disclosure Act."  *Klasek*, 393 Ill. App. 3d at 224.  The court concluded that a plaintiff may file a cause of action under the Disclosure Act that is separate and distinct from a cause of action for fraud.  *Klasek*, 393 Ill. App. 3d, at 224.

¶ 117        Plaintiffs next cite *Hirsch v. Feuer*, 299 Ill. App. 3d 1076 (1998), to argue that a cause of action under the Disclosure Act need not be pled with the specificity required for pleading a fraud cause of action.  In *Hirsch*, the plaintiffs filed a cause of action under the Disclosure Act and a cause of action for fraudulent misrepresentation and concealment.  *Hirsch*, 299 Ill.

App. 3d at 1078. The trial court granted the defendants' section 2-615 motion to dismiss, and the plaintiff appealed. *Hirsch*, 299 Ill. App. 3d at 1080. On appeal, this court found that the trial court should not have dismissed the cause of action under the Disclosure Act, but affirmed the trial court's order dismissing the cause of action for fraudulent misrepresentation and concealment, finding that the plaintiffs failed to allege facts with the necessary specificity to support a cause of action for fraud. *Hirsch*, 299 Ill. App. 3d at 1084-85.

¶ 118    Like the Disclosure Act, section 13-72-030 of the Chicago Municipal Code is not a codification of common law fraud, but rather a separate cause of action that plaintiffs may file. Furthermore, we find that the trial court's finding that section 13-72-030 of the Chicago Municipal Code applies only to preexisting facts to be erroneous. Section 13-72-030 of the Chicago Municipal Code concerns the marketing and sale of condominiums, which may occur before construction is complete. Prospective purchasers may purchase a condominium, based on representations made subject to section 13-72-030 of the Chicago Municipal Code, prior to completion of construction. If, as we stated above, defendants fraudulently concealed the falseness of their representations, and the statute of repose is tolled. *Eickmeyer*, 284 Ill. App. 3d at 141; *Reichelt*, 577 F. Supp. at 974-75. The Chicago Municipal Code provides an additional remedy in addition to common law fraud. Therefore, the trial court erred in dismissing count IV pursuant to section 2-615.

¶ 119                          B. Count V–Breach of a Fiduciary Duty

¶ 120    Finally, plaintiffs argue that the trial court erred in dismissing count V for failing to state a cause of action. In count V, plaintiffs allege that the Shipkas breached their fiduciary duty to the unit owners to pay their share of common expenses and to fund sufficient reserves.

¶ 121    In its order, the trial court found that defendants "only owed a fiduciary duty for the short period of time from June 20, 1996 to some later time in 1996 to maintain sufficient funds to repair the common defects," and that, after defendants turned over the Board to the elected managers, the elected Board became responsible for the overall administration of the property. The trial court concluded that defendants "had no duty to maintain fund [*sic*] on behalf of the condominium in 2009."

¶ 122    Section 9 of the Condominium Property Act (the Act) states the following:

"(a) All common expenses incurred and accrued or accrued prior to the first conveyance of a unit shall be paid by the developer, and during this period no common expense assessment shall be payable to the association. It shall be the duty of each unit owner including the developer to pay his proportionate share of the common expenses commencing with the first conveyance. The proportionate share shall be in the same ratio as his percentage of ownership in the common elements set forth in the declaration.

* * *

(c) Budgets and reserves

(1) The board of managers shall prepare and distribute to all unit owners a detailed proposed annual budget, setting forth with particularity all anticipated common expenses by category as well as all anticipated assessments and other income. *The initial budget and common expense assessment based thereon shall be adopted prior to the conveyance of any unit*. The budget shall also set forth each unit owner's proposed common expense assessment.

41

(2) *All budgets adopted by a board of managers on or after July 1, 1990 shall provide for reasonable reserves for capital expenditures and deferred maintenance for repair or replacement of the common elements.* To determine the amount of reserves appropriate for an association, the board of managers shall take into consideration the following: (i) the repair and replacement cost, and the estimated useful life, of the property which the association is obligated to maintain, including but not limited to structural and mechanical components, surfaces of the buildings and common elements, and energy systems and equipment; (ii) the current and anticipated return on investment of association funds; (iii) any independent professional reserve study which the association may obtain; (iv) the financial impact on unit owners, and the market value of the condominium units, of any assessment increase needed to fund reserves; and (v) the ability of the association to obtain financing or refinancing." (Emphases added.) 765 ILCS 605/9(a), (c)(1), (c)(2) (West 1996).

The common expenses referred to in section 9(a) include reserves. *Maercker Point Villas Condominium Ass'n v. Szymski*, 275 Ill. App. 3d 481, 484 (1995) (citing 765 ILCS 605/2(m) (West 1992) (" 'Common Expenses' means the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed by the Board of Managers of the Unit Owner's Association")).

¶ 123    This court examined the fiduciary duty to fund common expenses and reserves in *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill.

App. 3d 614 (1999). In *Weathersfield*, the plaintiffs were a condo association and its board of managers, and the plaintiffs filed a lawsuit alleging that the developer defendants breached their fiduciary duty under section 9 of the Act to fund common expenses and reserves. *Weathersfield*, 307 Ill. App. 3d at 616. The defendants included organizations which managed the association prior to turning it over to board members elected from the units, and which marketed and sold the individual units. *Weathersfield*, 307 Ill. App. 3d at 617. The association was incorporated in 1980. *Weathersfield*, 307 Ill. App. 3d at 617. The defendants began marketing and selling the units to buyers in 1992, and the defendants turned over the association to the elected board in 1993. *Weathersfield*, 307 Ill. App. 3d at 617. The plaintiffs alleged that, at the time the defendants turned over control of the association to the elected board, the association had $26,541.17 in capital reserves, and that extensive repair and replacement was needed for the roof and parking lots which would cost in excess of $500,000. *Weathersfield*, 307 Ill. App. 3d at 617.

¶ 124     The plaintiffs filed multiple amended complaints, eventually filing a fourth amended complaint. *Weathersfield*, 307 Ill. App. 3d at 617. The defendants filed a section 2-615 motion to dismiss and the trial court granted the motion. *Weathersfield*, 307 Ill. App. 3d at 618. The trial court found that the defendants did owe a fiduciary duty to the plaintiffs, but also found that because the plaintiffs did not exercise their right to rescind the contract under section 22 of the Act, the plaintiffs were precluded from seeking damages from the defendants. *Weathersfield*, 307 Ill. App. 3d at 618 (citing 765 ILCS 605/22 (West 1996) ("Failure on the part of the seller to make full disclosure as required by this Section shall entitle the buyer to rescind the contract for sale at any time before the closing of the contract and to receive a refund of all deposit moneys paid with interest thereon at the rate then in

43

effect for interest on judgments.")). On appeal, this court reversed the judgment of the trial court and remanded for further proceedings. *Weathersfield*, 307 Ill. App. 3d at 625.

¶ 125　　This court found that the plaintiffs' fourth amended complaint "alleged that, as board members, [the] defendants knew that from 1980 through November 6, 1993, the capital improvements of the Association, including the roofs and parking areas, were reaching the end of their useful life and by 1993 needed to be replaced and that [the] defendants failed to maintain adequate reserves for repair of the common areas." *Weathersfield*, 307 Ill. App. 3d at 620-21. The plaintiffs also alleged that the defendants should have known that the reserves would be inadequate to make the necessary repairs and replacements. *Weathersfield*, 307 Ill. App. 3d at 621.

¶ 126　　This court first examined whether section 22 precluded plaintiffs from recovering damages. We found that nothing in the language of section 22 "suggest[s] that the legislature intended to impose restrictions on a party's right to bring an action against a developer for failure to maintain adequate reserves," and that when the legislature has intended to impose restrictions on a party's right to bring an action, it has done so expressly. *Weathersfield*, 307 Ill. App. 3d at 622 (citing *Gabriel Builders, Inc. v. Westchester Condominium Ass'n*, 268 Ill. App. 3d 1065, 1069 (1994)). Therefore, we found that the trial court's basis for dismissing the complaint was erroneous. *Weathersfield*, 307 Ill. App. 3d at 622.

¶ 127　　We found that the plaintiffs adequately pled a cause of action for breach of fiduciary duty against the individual defendants who served on the board prior to the defendants turning the board and association over to the unit owners. *Weathersfield*, 307 Ill. App. 3d at 622. Since the officers of a condominium association and the members of its board owe a fiduciary duty to the members of the association, if the officers and directors fail to act in a manner

reasonably related to the exercise of that duty, liability will result not only for the association but also for the individuals themselves. *Weathersfield*, 307 Ill. App. 3d at 622.

¶ 128        We next found that the plaintiffs adequately pleaded damages. *Weathersfield*, 307 Ill. App. 3d at 623. Section 9(c)(2) requires that "[a]ll budgets adopted by a board of managers *** provide for *reasonable reserves* for capital expenditures and deferred maintenance for repair or replacement of the common elements." (Emphasis added.) 765 ILCS 605/9(c)(2) (West 1996). What constitutes "reasonable reserves" must be determined by the trier of fact. *Weathersfield*, 307 Ill. App. 3d at 623. We found that the plaintiffs adequately alleged that the reserve amount of $26,000 was unreasonable, when the defendants knew that upcoming repairs would cost at least $500,000. *Weathersfield*, 307 Ill. App. 3d at 623.

¶ 129        In the case at bar, plaintiffs have adequately pleaded a cause of action for breach of fiduciary duty. In *Weathersfield*, we found that the defendants' duty required them to ensure that the reserve funds *at the time they turned over the property* were adequate to fund the foreseeable repairs. *Weathersfield*, 307 Ill. App. 3d at 623. The *Weathersfield* defendants knew that, within three years of turning over control of the board, substantial repairs which would cost at least $500,000 would be necessary, and they breached their fiduciary duty to the plaintiffs by funding the reserves with less than $30,000. *Weathersfield*, 307 Ill. App. 3d at 623. In the instant case, plaintiffs allege that, at the time defendants turned over control of Henderson to the elected Board, they knew that the project contained significant latent defects that would require extensive repairs in the future. Whether defendants provided reasonable reserve funds to provide for the repair and replacement necessitated by these allegedly known latent defects is a question of fact that was inappropriately decided by the trial court pursuant to a section 2-615 dismissal. *Weathersfield*, 307 Ill. App. 3d at 623.

¶ 130        We understand that there is a difference between (1) the 3 years between the transfer of the board and the need for repairs in *Weathersfield* and (2) the roughly 10 years between the transfer of the Board and the need for repairs in the case at bar. In general, it is easier to foresee that repairs will be needed within three years than within a decade. However, *Weathersfield* stands for the principle that, at the time of turnover, developers must set aside reasonable reserves for repair. *Weathersfield*, 307 Ill. App. 3d at 623. What is reasonable must be determined by the trier of fact. *Weathersfield*, 307 Ill. App. 3d at 623. Plaintiffs have alleged that defendants knew, at the time of transfer, that extensive repairs would be needed to remedy the alleged inferior construction methods and that defendants did not reasonably budget for those repairs. Therefore, the trier of fact must be the one to determine whether the amount of the reserves in place at the time of transfer was reasonable. *Weathersfield*, 307 Ill. App. 3d at 623. This reasonableness analysis will include whether it was reasonable for defendants to anticipate, based on their knowledge of the alleged latent defects, what extensive repairs would be needed within the decade. As a result, a section 2-615 motion was not the proper method of disposing of count V. As a result, the dismissal by the trial court was in error.

¶ 131        Defendants argue that the fiduciary duty to establish a reserve fund arises only "to the extent the developer owns unsold units," and cites this court's decision in *Metropolitan Condominium Ass'n v. Crescent Heights*, 368 Ill. App. 3d 995 (2006). *Metropolitan* concerned a plaintiff condominium association which filed a cause of action against the defendant developer, asserting that the defendant was required to provide an accounting pursuant to section 18.2(d)(2) of the Act (765 ILCS 605/18.2(d)(2) (West 2004)). *Metropolitan*, 368 Ill. App. 3d at 996. Section 18.2(d)(2) states:

"Within 60 days following the election of the first unit owner board of managers, the developer shall deliver to the board of managers:

***

A detailed accounting by the developer, setting forth the source and nature of receipts and expenditures in connection with the management, maintenance and operation of the property and copies of all insurance policies and a list of any loans or advances to the association which are outstanding." 765 ILCS 605/18.2(d)(2) (West 2004).

We determined that *Metropolitan* "concern[ed] the transition period between [the plaintiff's] sale of the first condominium unit *** and the election of the [plaintiff's] unit-owner-controlled board." *Metropolitan*, 368 Ill. App. 3d at 997. "The nature of this transition is governed by the Act, which specifies that during the transition, 'the same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the board of managers by this Act and in the declaration and bylaws shall be held and performed by the developer.' " *Metropolitan*, 368 Ill. App. 3d at 997 (quoting 765 ILCS 605/18.2(a) (West 2004)). The Act requires developers to "pay assessments on unsold units beginning with the first conveyance and to collect assessments from unit owners until election of the first unit-owner-controlled board." *Metropolitan*, 368 Ill. App. 3d at 997 (citing 765 ILCS 605/9(a), 18.2(a), 18.4(d) (West 2004)). We found that the purpose of section 18.2(d)(2) is to

"facilitate the ability of unit owners (other than the developer) to verify that the developer has complied with its duty under section 9(a) of the [Act] to pay assessments on unsold units commencing on the date of the sale of the first unit and complied with its duty under sections 18.2(a) and 18.4(d) of the [Act] to

47

collect assessments from unit owners until election of the first unit-owner board."

*Metropolitan*, 368 Ill. App. 3d at 1004 (citing 765 ILCS 605/9(a), 18.2(a), 18.4(d) (West 2004)).

¶ 132       Defendants interpret *Metropolitan* to mean that its duty to contribute to a reserve fund to the extent that the development companies owned unsold units. Defendants argue that, while they controlled the Board, the Shipkas, who were never unit owners, were not required to fund reserves personally, but were instead required only to set, levy, collect, and expend assessments from unit owners. Defendants also argue that the development companies "apparently sold all of the units almost immediately," and that any duty to fund reserves did not last for very long.

¶ 133       We do not find defendants' argument persuasive. *Metropolitan* stands for the assertion that the Act entitles condominium associations to detailed accountings of association-related finances during the period of transition from the developer-controlled board to the first unit-owner-controlled board. *Metropolitan*, 368 Ill. App. 3d at 1004-05. *Metropolitan* does not limit the duty of boards to adopt budgets which "provide for *reasonable* reserves for capital expenditures and deferred maintenance for repair or replacement of the common elements." (Emphasis added.) 765 ILCS 605/9(c)(2) (West 2006). *Metropolitan* states that developers are required to *pay assessments* on unsold units, which is a different duty from the duty to *budget* for reasonable reserves. *Metropolitan*, 368 Ill. App. 3d at 1004.

¶ 134       Defendants had a duty to ensure that the assessments paid by owners during the time that defendants controlled the board allowed for reasonable reserves to be set aside in case of repair or replacement. *Weathersfield*, 307 Ill. App. 3d at 623. Plaintiffs have alleged that defendants knew that they did not adequately fund the reserves because defendants knew that

the substandard construction would require extensive and expensive repairs and replacements in the future.  See *Weathersfield*, 307 Ill. App. 3d at 623.

¶ 135        Defendants argue that plaintiffs were not damaged by defendants' failure to budget for reasonable reserves because, "for fifteen (15) years, [plaintiffs] enjoyed the benefit of paying lower monthly assessments."  Defendants argue that any of the Boards in the years between when defendants transferred control of the Board to unit owners and when plaintiffs filed this lawsuit could have charged higher assessments to fund higher reserves.  We do not find this argument persuasive.  First, as we have stated, defendants were bound by a fiduciary duty to budget for reasonable reserves.  765 ILCS 605/9(c)(2) (West 2006).  What is reasonable is determined, in part, by "the repair and replacement cost, and the estimated useful life, of the property which the association is obligated to maintain, including but not limited to structural and mechanical components, surfaces of the buildings and common elements, and energy systems and equipment."  765 ILCS 605/9(c)(2) (West 2006).  Plaintiffs have alleged that defendants knew, at the time of transfer, that the repair and replacement costs would be high as a result of substandard construction.  Therefore, defendants had a duty to charge assessments at a level high enough to fund adequate reserves for the repair and replacement of defects caused by substandard construction and materials.  Furthermore, defendants' argument that one of the unit-owner-controlled boards could have charged higher assessments to fund greater reserves ignores plaintiffs' allegation that the defects were not known to plaintiffs, and could not have been known to plaintiffs until they discovered the substandard construction and materials.  If plaintiffs did not know that the building would require extensive and expensive repairs and replacements resulting from the inferior

construction and materials, it would not have been reasonable to charge higher assessments to cover for such unknown repairs and replacements.

¶ 136                                        CONCLUSION

¶ 137        The dismissal of this case was improper. Plaintiffs have adequately pled causes of action, and questions of fact remain. We reverse the trial court's grant of dismissal and remand for further proceedings.

¶ 138        Reversed and remanded.

¶ 139        JUSTICE PALMER, specially concurring.

¶ 140        I concur in the result reached by the majority. I write separately to emphasize that it is simply the broad language of section 13-72-030 of the Chicago Municipal Code (Chicago Municipal Code § 13-72-030 (2009)) that leads to the conclusion that plaintiffs have successfully stated a cause of action under that section.

¶ 141        As noted by the majority, in the absence of controlling precedent with regard to this section of the Chicago Municipal Code, plaintiffs urge a comparison of similar provisions of the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/1 *et seq.* (West 2010)). Plaintiffs cite *Klasek,* 393 Ill. App. 3d 219, as well as *Hirsch*, 299 Ill. App. 3d 1076, for the propositions that the Disclosure Act provides a cause of action separate and distinct from common law fraud and that the Disclosure Act does not require the specificity in pleading required for common law fraud.

¶ 142        While these cases do stand for those propositions, they do not answer the question before us. The issue raised here is whether the common law's refusal to recognize promissory fraud also applies to section 13-72-030 of the Chicago Municipal Code. Neither of these cited cases involves an allegation of a false or misleading statement concerning the intent or

promise to do something in the future. *Klasek* involved the sellers' failure to disclose the existence of a current termite infestation in an existing home. *Klasek*, 393 Ill. App. 3d at 222. *Hirsch*, a case also involving the sale of an existing home, involved the failure to disclose defects in the heating, cooling, ventilating, and plumbing fixtures and systems. *Hirsch*, 299 Ill. App. 3d at 1078-1080. On the other hand, in the case *sub judice*, the complaint revolves around statements that new construction will include a certain type and amount of insulation, essentially the intent or promise to build the homes in a certain way.

¶ 143 Nevertheless, I believe that the majority correctly decides that these types of promises to do something in the future fall within the protection of section 13-72-030. Chicago Municipal Code § 13-72-030 (2009). A basic element of the cause of action for fraudulent misrepresentation, a form of common law fraud, is a false statement of material *fact*. *Hirsch*, 299 Ill. App. 3d at 1085. As defendants noted, this has been long interpreted to refer to existing facts and not false representations of intention or promises of future conduct. The trial court relied on this concept when it ruled, "[s]imilar to a fraud claim, the language of Section 13-72-030 applies to misrepresentations of pre-existing facts, and therefore does not apply to a promise to perform future conduct."

¶ 144 However, what the trial court's ruling failed to recognize when it equated section 13-72-030 to common law fraud was that the section does not require that the offending statement be a statement of *fact*. Significantly, section 13-72-030 doesn't even include the word "fact"; it merely requires a false statement. Chicago Municipal Code § 13-72-030 (2009). Surely, if the city council wished to equate this section with common law fraud, it could have easily used the phrase, "statement of *fact* which is false," as opposed to "any statement *** which is false." Chicago Municipal Code § 13-72-030 (2009). I interpret the city council's refusal to

51

track the well-known language of this element of common law fraud with regard to statements of *fact* to evidence a desire to enact a much broader protection for purchasers of condominiums. I therefore agree that section 13-72-030 applies to false statements concerning the intention or promise to build a condominium according to certain advertised specifications.